## WINCHESTER REPEATING ARMS CO. v. BUTLER BROS.

(District Court, N. D. Illinois, N. D. February 8, 1904.)

No. 26,897.

1. TRADE-NAMES—UNFAIR COMPETITION—INJUNCTION—PLEADING.

A bill for injunction by the Winchester Repeating Arms Company, alleging that defendant advertises for sale "Winchester Model Single Shot Take Down Rifles," thereby securing correspondence and getting hold of customers to whom it sells guns other than those made by complainant, states no cause of action, though alleging that defendant carries no stock of complainant's rifles, it not being shown that the mail-order business

---

¶ 1. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

requires the carrying of a stock, and not being alleged that persons have bought guns of defendant believing them to have been made by complainant.

2. JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY.

A complaint for injunction alleging that complainant's trade-name is worth in excess of $5,000; that defendant's acts are calculated to deceive and mislead intending purchasers of complainant's product, to its "great loss, injury, and damage"; and that unless defendant's acts are checked the reputation of complainant and its rifles will still further suffer great and irreparable damage--does not show jurisdiction in the federal court, as it cannot be assumed that the trade-name will be destroyed, or that complainant's damages are in excess of $2,000.

Matz, Fisher & Boyden, for complainant.
Leroy D. Thomas, for defendant.

KOHLSAAT, District Judge.   The above suit was instituted to restrain defendant from using complainant's trade-name of "Winchester," alone or with other word or imitation or symbol likely to be confused with the same in the sale of rifles other than those manufactured by complainant, and from advertising the sale of Winchester rifles, and furnishing, in response to inquiry for rifles named in such advertisement or for Winchester rifles, any other rifle than complainant's manufacture, and from using complainant's trade-name in any connection for the sale of complainant's rifles when they have none of complainant's rifles for sale.

The bill charges that defendant is engaged in a general mail-order business, selling principally to retailers, and that it publishes a catalogue which states that Butler Bros. has for sale "Winchester Model Single Shot Take Down Rifles," meaning complainant's manufacture, while, as complainant is informed and believes and charges the fact to be, it has none for sale, and has not had for some time past, and that said advertisements show a cut or picture identical with complainant's model.   It further charges that defendant has been and is in the habit of filling orders for said "Winchester Model Single Shot Take Down Rifles," received in answer to advertisements thereof by defendant, with rifles similar to complainant's, but not made by complainant, and which are of a grade lower than complainant's, thereby deceiving the purchasers and injuring the complainant's business.

There is no allegation that defendant sells or fills orders for said Winchester rifles with other rifles as and for Winchester rifles.   The substance of the charge is that defendant secures correspondence by using that name in advertising, and thus gets hold of customers, and succeeds in selling guns other than those made by complainant.

It does not appear that purchasers are imposed upon further than being brought into correspondence by means of the advertisement, nor is it apparent that complainant is thereby damaged.   As long as complainant's manufacture is in the market, any one may sell the same on the market, and it cannot be said to be fraudulent or unfair compe-

¶ 2. Jurisdiction of Circuit Courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.

tition to advertise that he will do so. While the customer may write for or order the complainant's product, still, if he is persuaded, however falsely, that defendant's gun is just as good, and is thereby induced to buy it, that is not the fraud or unfair competition upon which the court can grant an injunction. It does not appear from the bill that business known as mail-order business does require the carrying of a stock of the goods. It is charged that a catalogue is sent out, presumably based on the general market prices of merchandise, and the orders are presumably filled by purchase or otherwise, as the case may be. At any rate, these premises are not rebutted, nor is the manner of dealing disclosed. Therefore the fact that defendant carries no stock of the rifles in question is not, under the terms of the bill, evidence of any fraudulent intention. The allegations of the bill to the effect that defendant's conduct in the premises is calculated to deceive the purchasers and injure complainant is not such charge as justifies a court in enjoining defendant on the ground of fraud or unfair competition or infringement of trade-name, considered with the other allegations of the bill. Nor does complainant bring itself within the rule in such case by charging that the said acts of defendant have caused persons to believe that rifles kept and offered for sale and sold by defendant are complainant's manufacture. Mere belief is immaterial, unless acted on.

It is noteworthy that substantially all the material allegations of the bill are made upon information and belief. Surely, had there been any imposition upon customers, complainant would have discovered it. It certainly would be in position to know whether it had been injured in the premises. The foregoing reasons would be doubly cogent in case of dealings of defendant with retail dealers, as alleged in the bill.

The demurrer raises also a question of jurisdiction. The bill alleges that complainant's trade-name, "Winchester," is worth in excess of $5,000, but makes no charge as to the amount of present or prospective damage to complainant arising out of defendant's action, excepting the statements that defendant's acts are calculated to deceive and mislead intending purchasers of complainant's product, "to the great loss, injury, and damage" of complainant, and that unless such acts of defendant are checked "the reputation of the complainant and its rifles will still further suffer great and irreparable damage." There is no averment that complainant's trade-name will be destroyed, nor that it is in jeopardy. The court cannot assume, in the absence of allegations to that effect, that the trade-name will be destroyed, or that complainant's damages are in excess of $2,000.

It is true the danger of irreparable damages is set out, but that statement is both a conclusion and uncertain. Had the bill charged that the trade-name would be destroyed, then the value of the same would be the amount in controversy. As the matter now stands, the only amount in controversy involved is the amount of complainant's damages, present and prospective, in the premises, and they are not stated. I think it clear that the bill shows no jurisdiction in this court. Draper v. Skerrett (C. C.) 116 Fed. 206; Humes v. City of Ft. Smith (C. C.) 93 Fed. 862; Delaware, L. & W. R. R. Co. v. Frank (C. C.) 110 Fed. 694; Nashville, C. & St. Louis Ry. Co. v. McConnell (C. C.) 82 Fed. 65;

Stock Yards Co. v. Louisville & Nashville Ry. Co., 67 Fed. 35, 14 C. C. A. 290.

In brief filed by complainant's counsel it is stated: "Complainant is not prepared to admit that, by the advertisements of defendant and its substitution of inferior rifles, it is going to absolutely destroy that trade-name which years of fair dealing have built up." This is undoubtedly true, but, if there is no danger of destroying the trade-name, then it seems to me the value of the trade-name is not the amount in controversy.

The demurrer is sustained.