Common Pleas Court of Lucas County.

IRELAND ET AL. V. HIGGINSON.

Decided May 24, 1930.

*Brady, Yager, O'Connor, Bebout & O'Connor,* for plaintiff.

*Arnold F. Bunge,* for defendant.

WHITE, J.

The prayer of the petition in this case is for an injunction and damages. The plaintiffs voluntarily abandoned any claim for damages and the case is for hearing upon a motion to make permanent the temporary injunction heretofore granted on the 16th day of August, 1929.

At the beginning of the trial counsel for defendant requested a written finding of facts under the provisions of Section 11470 of the General Code, and complying with that request the court, after considering all of the evidence, finds the facts in the case to be as follows:

## FINDING OF FACTS.

The plaintiff William M. Ireland and Ida E. Ireland are now, and for approximately the last eleven months have been, engaged in business in the city of Toledo, Ohio, under the name of Ther-o-noid of Toledo. The business of the plaintiffs consists exclusively of selling and dis-

tributing magnetic health belts which are manufactured by the Ther-o-noid Corporation. The name of the magnetic health belt sold by the plaintiff is Ther-o-noid and the selling price is $75 less some discount for cash transactions.

By the terms and conditions of a certain contract entered into between the plaintiffs and the Ther-o-noid Corporation the plaintiffs are the sole and exclusive agents of the Ther-o-noid Corporation for the sale and distribution of Ther-o-noid belts in Lucas county and several adjoining counties in Northwestern Ohio.

For the purpose of establishing themselves in business, and to promote and increase the business so established, the plaintiffs expended large sums of money in advertising Ther-o-noid Belts in this and adjoining counties. The principal part of the plaintiff's advertising consisted of announcements over various radio broadcasting stations, and particularly over the station located at Detroit, Michigan, and the station located at Toledo, Ohio.

The court further finds that by reason of the plaintiffs advertisements many people in this community have become interested as prospective purchasers of Ther-o-noid Health Belts.

During the time they have been in business the plaintiffs have been able to sell a large number of belts, but there has been a large decrease in the monthly sales during the past few months. The court finds that some of the decrease is due to the acts of the defendant James A. Higginson as complained of in the petition.

As to the defendant James A. Higginson the court finds that he is now, and for some time past has been, engaged in the business of selling health belts of various makes, other than Ther-o-noid, in the city of Toledo, Ohio.

The defendant was not authorized by the Ther-o-noid Corporation to sell its belts in this and adjoining counties, nor did he represent that he had for sale, any new Ther-o-noid Belts.

The court finds from the evidence that the defendant, during the time complained of, published or caused to be

published in the Toledo *Blade,* Toledo *News-Bee* and Toledo *Times* more than one hundred advertisements, the substance of which were that he had a used Ther-o-noid Belt which he would sell cheap or at a sacrifice. The advertisements of the defendant were not published in good faith, for the reason that the defendant James A. Higginson did not have a used Ther-o-noid Belt in his possession which he wanted to sell or ever intended to sell, and therefore the court finds that the advertisements of the defendant were not published for the purpose of selling a used Ther-o-noid Belt, but solely for the purpose of procuring persons intending to purchase Ther-o-noid Belts to purchase one of the health belts he had for sale. The court finds the defendant did not represent to prospective purchasers of health belts that he was selling or offering to sell a Ther-o-noid belt, when in fact he was selling an entirely different belt, but on the other hand the defendant advised prospective purchasers that he did not have a Ther-o-noid Belt for sale, but that he did have for sale a health belt of another make which was just as good for less than half the cost of a Ther-o-noid.

The advertisements published or caused to be published by the defendant to the effect that he had for sale a used Ther-o-noid Belt cheap, were what is generally known as "blind ads," in that he did not give his name and address, but did give telephone numbers and post office numbers by which prospective purchasers could communicate with him.

The court further finds that by reason of the advertisements so published by him the defendant did procure some of the prospective buyers of Ther-o-noid Belts to purchase the belts he had for sale.

### Conclusions as to the Law.

The court having found the defendant was not acting in good faith in advertising a used Ther-o-noid Belt for sale, but in causing such advertisements to be published he was acting solely for the purpose of diverting prospective purchasers of Ther-o-noid Belts from the plaintiffs in order that he might sell them a health belt he had

for sale, the question arises; will equity furnish relief in such a case.

The claim of the plaintiff is simply a claim of unfair competition on the part of the defendant. While many authorities are to be found under the head of unfair competition, the most of them deal with the question of deception practiced by the seller in representing to the buyer that the goods he is offering for sale is a certain make, when in fact they are goods of another make. That question is not involved in this case for the reason the defendant did not make any such representations so far as the evidence is concerned.

In the opinion of the court none of the authorities cited by counsel in his brief, decide the exact question involved in this case, and the court, in the limited time he has devoted to the case, has been unable to find any decided case exactly in point.

In reading the syllabus of the case of the *Winchester Repeating Arms Co.* v. *Butler Bros.,* 128 Fed., 976, cited by counsel in his brief, it would seem the exact question in the case before the court has been decided, but in the opinion of the court in that case we discover that Butler Bros. were doing a mail order business and published a catalogue of various goods they had for sale.

It would seem from the opinion that Butler Bros. did not keep in stock all of the goods advertised in their catalogue, and did not, at least, have a Winchester Repeating shot gun as advertised.

It is true the court found the Butler Bros. tried to sell guns of other makes to buyers inquiring for Winchester Repeating Shot Guns, and represented such guns to be as good as Winchester Guns. This case, so far as the court was able to ascertain, has not been referred to any subsequent case dealing with the same or similar question, and from the limited statement of facts found in the opinion of the court it would seem unwise to follow some of the abstract statements of law found in the opinion of the court in that case.

That the method employed by the defendant in the case

before the court was unethical can hardly be disputed, but unethical business methods alone do not furnish grounds for equitable relief. The court is of the opinion that the method employed by defendant far exceeds that conduct which falls within the limit of 'the meaning of the term "unethical business methods."

There is no law which prevents or prohibits the owner of chattel property from selling or disposing of it, and in order to sell or dispose of it to the best advantage may advertise the same as extensively as he likes. The contract between the plaintiff and the Ther-o-noid Corporation giving to plaintiff the exclusive right to sell Ther-o-noid Belt was using this method 'for 'the purpose of diverting defendant, nor would he be violating any law or invading the rights of the plaintiff in advertising a Ther-o-noid Belt for sale if he actually had a belt he wanted to sell, and this is so even though he is a competitor of this plaintiff.

But in this case the defendant in advertising a Ther-o-noid Belt using this method for the purpose of diverting the business the plaintiffs had created for themselves by expensive advertising.

While it is true that courts are very careful not to extend the meaning of unfair competition to include acts which may be unethical, but not illegal, yet they do not hesitate long in characterizing acts, however, new and unique they may be, which infringe upon the rights of competitors.

There is no doubt but that the defendant labored under the mistaken idea or belief that he was acting entirely within the law by using this method to appropriate for his own benefit the reputation of health belts and the demand created therefore by the ingenious, attractive and persistent manner in which Ther-o-noid Belts were advertised by the plaintiffs.

The only purpose of the defendant in publishing the advertisements complained of was to reap the benefits of the business created by the plaintiffs at great expense.

To permit the defendant by such a method to step in

at the eleventh hour and appropriate the advantages and benefits of an expensive and extensive advertising campaign conducted by the plaintiff would be to permit an infringement of the plaintiffs rights and an appropriation of their property, and such conduct is not only unethical but it is an unjust invasion of the rights of the plaintiffs which courts of equity will protect.

The temporary injunction heretofore granted will therefore be made permanent and an entry may be prepared to that effect.