## WARNER `v.` SEARLE AND HERETH CO.

### APPEAL FROM THE COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 42. Argued November 2, 3, 1903.—Decided November 30, 1903.

1. It is the use without right of the registered trade-mark of another in foreign or Indian commerce that gives jurisdiction to the Federal courts under the act of March 3, 1881.

2. The averments of the bill in this case are treated as sufficiently asserting the use of the registered trade-mark and the alleged imitation in foreign commerce to found jurisdiction in the Circuit Court under the act as well as on diverse citizenship.

3. But as it did not appear that the alleged imitation was used in foreign or Indian commerce or on merchandise intended to be transported to a foreign country, the decree in favor of appellee is affirmed.

WILLIAM R. WARNER, a citizen of Pennsylvania, filed this bill against The Searle & Hereth Company, a corporation of Illinois, and Gideon D. Searle and others, citizens of Illinois, in the Circuit Court of the United States for the Northern District of Illinois, alleging:

That complainant "was the sole and exclusive owner and proprietor of, and had used in his business in Philadelphia and in commerce between the United States and foreign countries, and particularly with New South Wales and Victoria, a certain arbitrary and fanciful mark, termed Pancreopepsine, upon bottles and packages containing a certain medicinal preparation," and had sold large quantities thereof "throughout the United States and in commerce with foreign countries, and particularly in the cities of Philadelphia and Chicago;" and that the public generally had come to recognize packages and bottles so marked as containing the preparation manufactured by complainant.

That on December 26, 1882, complainant registered said trade-mark in the Patent Office and obtained a certificate of registration according to law, a copy of which certificate and accompanying statement and declaration was attached. That defendants had, in violation of complainant's rights, "counterfeited, copied and colorably imitated the trade-mark registered," and affixed the mark or symbol "to a medicinal preparation of the same general nature as that manufactured" by complainant, and had so closely imitated complainant's mark or symbol, and the manner of placing it on bottles and wrappers, that the public had been deceived into believing that the goods of defendants were those of complainant; "and that the said defendants, together and individually, have sold in the Northern District of Illinois, and elsewhere, large quantities of the medicinal preparation intended for the cure of indigestion similar to that manufactured by your orator and contained in packages or bottles marked with the trade-mark or symbol heretofore referred to as belonging solely to your orator, or in such close imitation of your orator's trade-mark or symbol as has deceived the public and led such public to believe the said mark or symbol designated the goods manufactured by your orator;" so that complainant's sales have been lessened, and profits lost.

It was further averred that "the public in general, and par-

ticularly the citizens of the Northern District of Illinois, iden-
tify the article by the name, mark or symbol; and that the
spurious article manufactured and sold by the defendants as-
sociated with the same mark or symbol, or a mark or symbol
in close imitation thereof, is a fraud and deception upon such
of the citizens of the Northern District of Illinois, and else-
where, as purchase the same, believing it to be the genuine
article manufactured by your orator, and thereby the public
generally, and particularly the citizens of the Northern Dis-
trict of Illinois, are damaged and misled."

Complainant prayed for an accounting; for damages; and
for injunction.

Defendants in their answer denied that the word "Pan-
creopepsine" was a proper subject for registration as a trade-
mark; and charged that "if not deceptive it is purely descrip-
tive, being a mere compound of the ordinary names of the
ingredients, or the principal ingredients, contained in the
medicinal compound, with the name of one slightly modified,
and they deny, on information and belief, that the public have
associated the said name with the goods manufactured by
the complainant."

They averred that they were engaged in business in Chicago
as general manufacturing chemists, and that they had, among
other things, "put upon the market a medicinal compound
having special merit as an aid of digestion, consisting, aside
from the diluent, of nearly forty per cent of pure pancreatin,
about fifty per cent of pure pepsin, and a few other ingredients
in relatively small proportions; that pancreatin and pepsin
are well-known medicinal agents of recognized efficacy in pro-
moting digestion, and have been mixed together for medicinal
purposes for nearly or quite thirty years past; that they have
designated their compound upon the labels of their bottles
and packages 'Pancro-Pepsin' in order that the nature of the
compound may be expressed and its purpose as a digestive
implied by the name; that they have put the said preparation
in bottles and sold it upon the market both as a powder and

in liquid form, the latter being designated 'Elixir Pancro-Pepsin.' "

Defendants said that in adopting the name they had only followed common usage where it was desired that the name should be generally descriptive of the compound to which it was applied, and that their compound could not be more appropriately designated; and they denied that they had in any manner or way whatsoever copied or colorably imitated complainant's alleged trade-mark, or that they had at any time misled the public or any member thereof, into supposing that the pancro-pepsin manufactured and sold by them was of complainant's manufacture, or that any person could have been so misled. And they averred that even if the name "Pancreopepsine" could be the subject of a lawful trade-mark, which they denied, it had not been infringed by them.

Replication was filed, evidence taken, and hearing had. The Circuit Court held that complainant's contention touching unfair competition was not established, but that the trade-mark was valid and had been infringed, and granted an injunction.

The case was carried to the Circuit Court of Appeals, and William R. Warner, Jr., executor, was made party in place of William R. Warner, deceased. The Circuit Court of Appeals agreed that there was no proof establishing unfair competition; held that the monopoly claimed could not be sustained; and reversed the decree of the Circuit Court and remanded the cause with directions to dissolve the injunction and dismiss the bill. 112 Fed. Rep. 674. From that decree this appeal was prosecuted, and argued on a motion to dismiss as well as on the merits.

*Mr. Frank T. Brown,* with whom *Mr. Samuel E. Darby* was on the brief, for appellant:

There is a right of appeal to this court. The trade-mark is registered and the appeal to the Circuit Court of Appeals is not made final. The suit does not depend entirely upon common

law trade-mark. The use by defendant of this trade-mark in commerce with foreign nations is a question of merit and not of jurisdiction; the statute requires use by the registrant but not foreign use by infringer. *United States* v. *Steffens,* 100 U. S. 82; *Watch Co.* v. *Watch Case Co.,* 87 O. G. 2323; 94 Fed. Rep. 667 and 179 U. S. 665. The constitutionality of the trade mark act is drawn in question in this suit. A statute merely requiring that on the owner of the trade-mark establishing use in commerce with foreign nations or Indian tribes the counterfeiting of the trade-mark is prohibited, is constitutional as it comes under pars. 3 and 18, § 8, art. I, giving Congress power to regulate commerce and to make all laws necessary to carry its powers into execution. *Addyston* v. *United States,* 175 U. S. 211, 228; *United States* v. *Traffic Assn.,* 171 U. S. 505; *Gibbons* v. *Ogden,* 9 Wheaton, 196; *Brown* v. *Maryland,* 12 Wheaton, 419. This covers regulation of instrumentalities of such commerce. *Hopkins* v. *United States,* 171 U. S. 578. Trade-marks are instrumentalities. *Trade Mark Cases,* 100 U. S. 82; *Fulton* v. *Sillers,* 4 Brews. 42, Pennsylvania.

On the merits there is such a resemblance between the trademarks as to deceive a purchaser using ordinary caution. *Pophan* v. *Cole,* 66 N. Y. 69; *McLain* v. *Fleming,* 96 U. S. 245; 13 O. G. 913; *Coleman* v. *Crump,* 70 N. Y. 573; *Tea Co.* v. *Herbert,* 7 Eng. Rep. Pat. & Tr. Mk. Cases, 183; *Scheuer* v. *Muller,* 74 Fed. Rep. 225; *Paris Medicine Co.* v. *W. H. Hill Co.,* 102 Fed. Rep. 150; *Stuart* v. *F. H. Stuart Co.,* 91 Fed. Rep. 243; *Pillsbury* v. *Flour Mills Co.,* 64 Fed. Rep. 841; *Johnson* v. *Bauer,* 82 Fed. Rep. 662; Brown on Trade Marks, 2d ed. ch. 8; Upton on Trade Marks.

The defendant's defense that purchasers cannot be deceived as to the origin of the goods because they place their name upon the bottle and package has been overruled many times. *N. K. Fairbank Co.* v. *Central Lard Co.,* 64 Fed. Rep. 136; *Battle* v. *Finlay,* 45 Fed. Rep. 796; *Roberts* v. *Sheldon,* Fed. Cases No. 11,916, and cases there cited; *Sawyer* v. *Horn,* 1 Fed. Rep. 24; *Hier* v. *Abrahams,* 82 N. Y. 519; *Shaver* v. *Heller & Merz Co.,*

96 O. G. 2229; *Vulcan* v. *Myers*, 139 N. Y. 304; *Amoskeag Manufacturing Co.* v. *Trainer*, 101 U. S. 51; *National Biscuit Co.* v. *Baker*, 95 Fed. Rep. 135.

The defendants had notice of their infringement and refused to desist and this makes their continued use constructively fraudulent. *Fuller* v. *Huff*, 92 O. G. 1621; *Orr Ewing Co.* v. *Johnston Co.*, 13 Ch. Div. 434; *Marritowic Co.* v. *William Numsen & Sons*, 93 Fed. Rep. 196; *Millington* v. *Fox*, 3 My. & C. 338; *Coffeen* v. *Brenton*, 4 McLean, 516. The prior adoption is not sustained by the proof. The sale of a few bottles will not constitute a use. The name is not by itself definitively descriptive. See *Lactopeptine Cases, Carnrick* v. *Mackey; Same* v. *Morson*, reported, 1877, Law Journal Notes of Cases, p. 713, and in Sebastian on Trade Marks; *Carnrick* v. *Mackey*, decided March, 1877, High Court of Justice, Chancery Division. A name merely descriptive and not definitively descriptive is a valid trade mark. Instances: Bromo Caffeine, *Keasby* v. *Brooklyn Chemical Works*, 37 N. E. 476; Momaja, *Am. Grocery Co.* v. *Sloan*, 68 Fed. Rep. 539; Cottolene, *Fairbank* v. *Central Lard Co.*, 64 Fed. Rep. 133; Vitæ-Ore, *Noel* v. *Ellis*, 86 O. G. 633; Bromo-Quinine, *Paris Medicine Co.* v. *Hill*, 102 Fed. Rep. 148; Bromida, *Battle Co.* v. *Finlay*, 45 Fed. Rep. 796; Royal, *Raymond* v. *Royal Baking Powder Co.*, 85 Fed. Rep. 231; Asepsin, *Lloyd* v. *Chemical Co.*, 25 Wkly. Law Bull. 319; Saponifier, *Salt Mfg. Co.* v. *Meyers*, 79 Fed. Rep. 87.

*Mr. Philip C. Dryenforth* for appellees:

This court is, on the face of the pleadings, without jurisdiction. In § 6 of the Court of Appeals act of 1891, the word "entirely" is of controlling importance and as this is really a case on common law trade-marks, the bill of complaint having been amended to show diverse citizenship, and the statutory amount involved the jurisdiction is really dependent entirely upon diverse citizenship and the judgment of the Court of Appeals is final. *American Sugar Refining Co.* v. *New Orleans*, 181 U. S. 275; *Union Pacific Railway Co.* v.

*Harris*, 158 U. S. 326; *Howard* v. *Stewart*, 184 U. S. 754; *Press Publishing Co.* v. *Monroe*, 164 U. S. 105; *Ex parte Chas. F. Jones*, 164 U. S. 691; *Northern Pacific Co.* v. *Amato*, 144 U. S. 465; *Sonnentheil* v. *Christian Morlein Co.*, 172 U. S. 401; *Third Street & Suburban Railway Co.* v. *Lewis*, 173 U. S. 458; *The Colo. Cent. Consol. Mining Co.* v. *Turck*, 150 U. S. 137; *Borgmeyer* v. *Idler*, 159 U. S. 407; *Benjamin* v. *New Orleans*, 169 U. S. 161.

The mere recital in a bill of complaint of the registration of a trade-mark, without any allegation as to complainant's rights thereunder to use the same in foreign commerce or with Indian tribes, will not suffice to force jurisdiction on this court. *Ryder* v. *Holt*, 128 U. S. 525; Browne on Trade Marks, 2d ed. 294; *Wrisley* v. *Soap Co.*, 90 Fed. Rep. 5; *Watch Case Co.* v. *Watch Co.*, 94 Fed. Rep. 667; 179 U. S. 365; *Schumacher* v. *Schwencke*, 26 Fed. Rep. 818; *Trade-Mark Cases*, 100 U. S. 82; *Luyties* v. *Hollender*, 21 Fed. Rep. 281; 21 Stat. at L. 504, ch. 128, § 11; *Paint Co.* v. *Mfg. Co.*, 53 Fed. Rep. 493; *Glen Cove Co.* v. *Ludeling*, 22 Fed. Rep. 823; *Gravely* v. *Gravely*, 42 Fed. Rep. 265; *Hennessey* v. *Braunschweiger*, 89 Fed. Rep. 664.

The alleged trade-mark was never used in foreign commerce or in commerce with an Indian tribe since the consignments referred to in the declaration for the purpose of obtaining registration, and there is no evidence that the defendants infringed in foreign commerce or with an Indian tribe. The name is not a proper trade-mark as it is a mere description. "Ferro-phosporated" case, *Caswell* v. *Davis*, 58 N. Y. 223; "Air cells," "fire-board," *Asbestos Mfg. Co.* v. *Ambler &c. Co.*, 99 Fed. Rep. 85. See also *Rumford Chemical Works* v. *Muth*, 35 Fed. Rep. 524; *Canal Co.* v. *Clark*, 13 Wall. 311; *Colgan* v. *Danhaser*, 35 Fed. Rep. 150; "Cresol," etc., *Soap Co.* v. *Thompson*, 25 Fed. Rep. 625; *Hostetter* v. *Fries*, 17 Fed. Rep. 620; "L. L.," *Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.*, 138 U. S. 537; *Coates* v. *Thread Co.*, 149 U. S. 562, 572; "Columbia," *Mill Co.* v. *Alcorn*, 150 U. S. 460; "Pile-Leclanche" *Battery Co.* v. *Electric Co.*, 23 Fed. Rep. 276; *Singer Mfg. Co.* v.

*Stanage*, 6 Fed. Rep. 279; *Corwin* v. *Daily*, Am. Tr. Mk. Cas. 265; *Amoskeag Mfg. Co.* v. *Spear*, Am. Tr. Mk. Cas. 87; *Corbin* v. *Gould*, 133 U. S. 308; *Brown Chemical Co.* v. *Heyer*, 139 U. S. 540; *Elgin National Watch Co.* v. *Illinois Watch Co.*, 179 U. S. 665; *Harris* v. *Stucky*, 46 Fed. Rep. 624.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

In the *Trade-Mark Cases*, 100 U. S. 82, it was ruled that the act of July 8, 1870, carried forward into sections 4937 to 4947 of the Revised Statutes, was invalid for want of constitutional authority, inasmuch as it was so framed that its provisions were applicable to all commerce, and could not be confined to that which was subject to the control of Congress. But Mr. Justice Miller, speaking for the court, said that the question "whether the trade-mark bears such a relation to commerce in general terms as to bring it within Congressional control, when used or applied to the classes of commerce which fall within that control, is one which, in the present case, we propose to leave undecided."

That decision was announced at October term, A. D. 1879, and on March 3, 1881, an act was approved entitled "An act to authorize the registration of trade-marks and protect the same." 21 Stat. 502, c. 138.

By its first section it was provided that "owners of trade-marks used in commerce with foreign nations, or with the Indian tribes, provided such owners shall be domiciled in the United States, or located in any foreign country or tribes which by treaty, convention or law, affords similar privileges to citizens of the United States, may obtain registration of such trade-marks by complying with" certain specified requirements.

By the second section, the application prescribed by the first "must, in order to create any right whatever in favor of the party filing it, be accompanied by a written declaration,"

"that such party has at the time a right to the use of the trade-mark sought to be registered, and that no other person, firm, or corporation has the right to such use, either in the identical form or in any such near resemblance thereto as might be calculated to deceive; that such trade-mark is used in commerce with foreign nations or Indian tribes, as above indicated; . . ."

The third section provided that "no alleged trade-mark shall be registered unless the same appear to be lawfully used as such by the applicant in foreign commerce or commerce with Indian tribes as above mentioned or is within the provision of a treaty, convention, or declaration with a foreign power; nor which is merely the name of the applicant; nor which is identical with a registered or known trade-mark owned by another and appropriated to the same class of merchandise, or which so nearly resembles some other person's lawful trade-mark as to be likely to cause confusion or mistake in the mind of the public, or to deceive purchasers."

By the fourth section certificates of registration of trade-marks were to be issued, copies of which, and of trade-marks and declarations filed therewith, should be evidence "in any suit in which such trade-marks shall be brought in controversy;" and by section five it was provided that the certificate of registry should remain in force for thirty years from its date, and might be renewed for a like period.

Sections seven, ten, eleven and thirteen are as follows:

"SEC. 7. That registration of a trade-mark shall be *prima facie* evidence of ownership. Any person who shall reproduce, counterfeit, copy or colorably imitate any trade-mark registered under this act and affix the same to merchandise of substantially the same descriptive properties as those described in the registration, shall be liable to an action on the case for damages for the wrongful use of said trade-mark, at the suit of the owner thereof; and the party aggrieved shall also have his remedy according to the course of equity to enjoin the wrongful use of such trade-mark used in foreign commerce or

commerce with Indian tribes, as aforesaid, and to recover compensation therefor in any court having jurisdiction over the person guilty of such wrongful act; and courts of the United States shall have original and appellate jurisdiction in such cases without regard to the amount in controversy."

"SEC. 10. That nothing in this act shall prevent, lessen, impeach, or avoid any remedy at law or in equity which any party aggrieved by any wrongful use of any trade-mark might have had if the provisions of this act had not been passed.

"SEC. 11. That nothing in this act shall be construed as unfavorably affecting a claim to a trade-mark after the term of registration shall have expired; nor to give cognizance to any court of the United States in an action or suit between citizens of the same State, unless the trade-mark in controversy is used on goods intended to be transported to a foreign country, or in lawful commercial intercourse with an Indian tribe."

"SEC. 13. That citizens and residents of this country wishing the protection of trade-marks in any foreign country, the laws of which require registration here as a condition precedent to getting such protection there, may register their trade-marks for that purpose as is above allowed to foreigners, and have certificate thereof from the Patent Office."

Obviously the act was passed in view of the decision that the prior act was unconstitutional, and it is, therefore, strictly limited to lawful commerce with foreign nations and with Indian tribes. It is only the trade-mark used in such commerce that is admitted to registry, and it can only be infringed when used in that commerce, without right, by another than its owner.

Reading the seventh, tenth and eleventh sections together, we find that the registration is *prima facie* evidence of ownership; that any person counterfeiting or colorably imitating any trade-mark registered under the act, is liable, in the Federal courts, to an action on the case for damages for, and to injunction to restrain, its wrongful use, that is, the use of the

simulated mark in foreign commerce or with the Indian tribes; that the provisions of the act cannot operate to circumscribe any remedy which ·a party aggrieved by any wrongful use of any trade-mark might otherwise have had; and that the courts of the United States cannot take cognizance of an action on the case or a suit in equity between citizens of the same State, "unless the· trade-mark in controversy is used on goods intended to be transported to a foreign country, or in lawful commercial intercourse with an Indian tribe."

Where diverse citizenship exists, and the statutory amount is in controversy, the courts of the United States have jurisdiction, but where those conditions do not exist, jurisdiction can only be maintained when there is interference with commerce with foreign nations or Indian tribes, and it is in such cases that the amount is declared by section 7 to be immaterial. · The registered trade-mark must be used in that commerce, and is put in controversy by the use of the counterfeit or imitation on goods. intended for such commerce, as prescribed by section 11.

We cannot concur in the. view that the mere counterfeiting or imitating a registered trade-mark and affixing the same is the ground of the action on the case, in the Federal· courts, given by section 7, for it is the wrongful use of the counterfeit or imitation that creates the liability at law and justifies the remedy in equity. And the intent and object of the act forbid a construction that would bring local commerce within its scope.

In the·present case, diverse citizenship, and requisite amount, existed, and the Circuit Court, therefore, had jurisdiction, but it is argued that the jurisdiction depended entirely on diversity of citizenship, and hence that the decision of the Circuit Court of Appeals was final. We think, however, that as infringement of a trade-mark registered under the act was charged, the averments of the. bill, though quite defective, were sufficient to invoke the jurisdiction also on the ground that the

case arose under a law of the United States, and will not, therefore, dismiss the appeal.

The bill was filed in February, 1898, and must be treated as alleging that the trade-mark was then in use in foreign or Indian commerce, although the proofs do not make out that fact after December 26, 1882.

T' certificate of registry was good for thirty years as matter of e .nce, but when it was sought to enjoin the wrongful use it should have been made to appear that the trade-mark was then being used in that commerce, and that that use was interfered with, without right, by defendant. And if the presumption of continuing use in such commerce flows from the registry, nevertheless, to make out infringement, it must appear that the alleged counterfeit or imitation was being used on merchandise intended to be transported to a foreign country or in lawful commercial intercourse with an Indian tribe.

We so held, in effect, in *Ryder* v. *Holt*, 128 U. S. 525, and we see no reason to depart from that ruling.

, But the evidence in this record does not show that defendant used the name of its preparation on merchandise intended to be so transported, while the sales proved were sales in the city of Chicago and Northern District of Illinois, and there is nothing to indicate that the preparation was intended to be used in foreign or Indian trade.

In short, even if it were assumed that there could be a trade-mark in the use of the word "Pancreopepsine," which would be invaded by the use of the word "Pancro-Pepsin," the Circuit Court could not, by virtue of the act, enjoin such use because it was not used in the commerce to which the act related.

Our conclusion does not require us to consider the question of the constitutionality of the act, which, it may be added, does not seem to have been raised in the courts below.

*Decree affirmed.*