## FINCHLEY, Inc., v. FINCHLY CO., Inc.

District Court, D. Maryland.

June 11, 1929.

Cox & Campbell, of New York City (Clarence G. Campbell, of New York City, of counsel), and Haman, Cook, Chesnut & Markell, of Baltimore, Md. (George Ross

Veazey, of Baltimore, Md., of counsel), for plaintiff.

John E. Cross and Louis Hollander, both of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

The present suit is based upon two grounds: First, infringement of the registered trade-mark "Finchley" and its accompanying crest or symbol; and, secondly, upon unfair competition.

The only difference between the spelling of the name "Finchley" as used by the complainant in its corporate name and trade-mark, and that used by the defendant in its corporate name, advertisements, correspondence, labels, and so forth, is that the former spells the words with the letter "e" in the last syllable, and the latter does not. The similarity between the two words seems to the court to be so great as not to be open to question. Their appearance and sound are strikingly similar. The defendant uses the Old English type, just as this complainant, even to the extent of adopting it on the front of its store. The court attaches no material significance to the fact that the defendant adds the words, "A Baltimore Institution," to its labels.

So the real question is this: Is the complainant on the pleadings and evidence in this case vested with such ownership and right to the use of this word as prevents the defendant from using it itself? I understand that there is no claim being made for an accounting in damages, but only for an injunction, in the present case.

Defendant asserts that complainant is not entitled to an injunction, because: First, there is no averment or proof of an interstate use of the name, actual or threatened, by defendant; secondly, because the name "Finchley" is a geographical one in which a secondary meaning has not been acquired and cannot be acquired; third, because complainant has disclaimed the right to use it as it does; fourth, because there is lack of similarity between complainant's and defendant's goods, that is, that there is no competition; and, lastly, because the complainant himself is guilty of misrepresentation.

As to the trade-mark, I find no averment or proof of interstate use, either actual or threatened, by defendant. Assuming without deciding that such proof is necessary, namely, that defendant's business as well as complainant's is interstate in character (compare Warner v. Searle & Hereth Co., 191 U.

S. 195, 24 S. Ct. 79, 48 L. Ed. 145, and U. S. Printing & Lithograph Co. v. Griggs, Cooper & Co., 279 U. S. 156, 49 S. Ct. 267, 73 L. Ed. 650), the result here reached should not be different, because with respect to the question of unfair competition the court finds that the jurisdictional allegations of the bill are sufficient and also that the complainant has sustained the burden of proof imposed upon it, which entitles it to have the defendant enjoined from further use of the name.

With respect to the claim that the name "Finchley" is a geographical one, it seems to the court sufficient to say that geographical names often acquire a secondary significance, indicative not only of the place of manufacture, but of the name of the manufacturer or producer and the quality of the thing manufactured or produced, which enables the manufacturer or owner to assert exclusive right to such name as against every one not doing business within the same geographical limits, and even as against them if the name be used fraudulently for the purpose of misleading buyers as to the actual origin of the thing produced, or palming off the products of one person as those of another. I understand that to be the guiding principle, certainly it is the principle announced in such cases as French Republic v. Saratoga Vichy Spring Co., 191 U. S. 427, 24 S. Ct. 145, 48 L. Ed. 247, and in Siegert v. Gandolfi (C. C. A.) 149 F. 100, and also in Anheuser-Busch v. Budweiser Malt Products Corporation (C. C. A.) 295 F. 306.

We next come to the third question, that of disclaimer. As to this, it seems to the court sufficient to say that when a trade-mark includes unregisterable matter, the applicant may disclaim the unregisterable part and thereby preclude himself from setting up any exclusive right to it, and yet not be deprived of the benefits of registration of his trade-mark as a whole. I understand that to be the rule in Beckwith v. Commissioner, 252 U. S. 538, 40 S. Ct. 414, 64 L. Ed. 705. The disclaimer, as I read it in the present case, amounts to no more than this. But assuming that it does, and assuming further that the word "Finchley" is not capable of registration apart from the mark, we still have to consider complainant's rights in it as a trade-name, as opposed to a trade-mark, a trade-name as used in the common-law sense.

That brings us, then, to the fourth question, namely, that of similarity between the goods manufactured and sold by the complainant, and those manufactured and sold

by the defendant. It is necessary to advert for a moment to the trend in the law dealing with cases of this kind. Must the owner of a trade-mark permit the use of that mark on articles which he does not himself sell? In the present case it is to be noted that, as a matter of fact, complainant does sell, to some extent at least, women's apparel; that is, women's coats. It is comparatively easy to carry over the good will of one article in which the public has confidence to another, by associating the first and the second, even though the seller or maker of the first may be unknown, and also for a firm to extend its good will into territory where its goods have never been sold, but where its reputation has already gone. In owning a mark which enjoys such trust and confidence in relation to one article or place, the owner possesses valuable property in the right to use that familiar and popular mark, or name, in the extension of his business to new lines of goods and to new territory. He owns a right to use the popularity of that mark or name or object for his profit, and to prevent its use by others to his detriment. He owns a right to use it to extend his business, and to increase his profits to an extent impossible, perhaps, if he refrained from so doing or used some other's mark, or name, which did not enjoy the confidence which the public placed in the same brand. Nims on Unfair Competition and Trade-Marks (3d Ed.) § 221a. As the court views the decisions, this is undoubtedly their trend, whatever may appear to have been said to the contrary in such cases as Borden Ice Cream Co. v. Borden's Condensed Milk (C. C. A.) 201 F. 510, and similar cases. Whether such earlier cases are distinguishable on their facts from the present case it is not here necessary to decide.

As was said in the Aunt Jemima Case (C. C. A.) 247 F. 407, 410, L. R. A. 1918C, 1039: "No one has a right to apply another's name to his own goods. If, for instance, one were to publish a book on banking under the name of a firm of bankers, it would be no answer to say that there was no competition between banking and publishing, or that the bankers had sustained no pecuniary damage, or that the book was a good book. The act would still be a trespass, for which the bankers would be entitled to at least nominal damages at law, and, that remedy being inadequate and the trespass being a continuing one, they would be entitled to relief in equity."

The doctrine of unfair competition simply means that no one should be allowed to sell his goods as those of another. To be sure,

this rule is usually invoked when there is actual market competition between the analogous products of the complainant and defendant. But as was said in Vogue Co. v. Thompson-Hudson Co. (C. C. A.) 300 F. 509, 512: "There is no fetish in the word 'competition.' The invocation of equity rests more vitally upon the unfairness. If B. represents that his goods are made by A., and if damage therefrom to A. is to be seen, we are aware of no consideration which makes it controlling whether this damage to A. will come from market competition with some article which A. is then manufacturing or will come in some other way. The injury to A. is present, and the fraud upon the consumer is present; nothing else is needed." See also Vogue Co. v. Vogue Hat Co. (C. C. A.) 6 F. (2d) 875; Id. (C. C. A.) 12 F.(2d) 991.

Again, as was said in Rogers, Ltd., v. Majestic Products Corp. (D. C.) 23 F.(2d) 219, 220: "The goods capable of being so passed off are not limited to those that are identical or even to those that have the same descriptive properties. Many articles, quite dissimilar in their appearance, properties, and use, may nevertheless bear such relation to each other and be so associated in the mind of the public that confusion and deception touching their respective origins will follow as a natural consequence, if their dress or marks are similar."

And again, as was said in the case of Yale Electric Corporation v. Robertson (C. C. A.) 26 F.(2d) 972, 974, by Judge Hand: "It has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful."

This principle has been applied to flour and syrup, automobiles and radio tubes, medicines and cigars, men's suits and hats and caps, flash-lights and padlocks, and the court does not see that it is really any extension of the existing law to apply the principle in the present case.

■ With respect to the question of intent, assuming that intent to defraud on the part of defendant is actually necessary in cases of unfair competition, the court feels that on the evidence such intent has, as a matter of fact, been proven. This seems clear from the manner in which, and the time when, defendant first began using the name "Finchly." The president of defendant company has testified that he was accustomed to frequent the neighborhood of the Finchley store; that relatives lived near by; that his attention was called to this concern; that his own company first began to use the name thereafter. We have the further significant fact that the Old English type is uniformly used by defendant on all labels, boxes, and correspondence. In the face of such evidence the court can attach little weight to the statements of defendant's president that the name was adopted upon the mere chance suggestion of a relative, or by a process of elimination.

■ Lastly, the court finds no evidence to support the contention of defendant that complainant has itself acted unfairly, to the extent that would require the court to deny relief. In order to prevail, the defense of unclean hands must usually be based upon conditions existing at the time when the party applies for equitable relief. That may not always be the case. It is a question of degree, of course. But in any event, whether or not such alleged misrepresentation as may have been practiced here through certain advertisements had actually been discontinued several years before the bringing of this suit, it does not appear that any one actually has relied upon them to their detriment, or that they are of such character as really to mislead, in view of all the circumstances of complainant's operations, and the admitted activities of its president and other representatives in England for the purpose of securing the latest English styles and fabrics.

■ As to the contention of defendant that complainant is outlawed because of his failure to comply with the statutory requirements of the Maryland Corporation Law governing domestic and foreign corporations, it is sufficient to point out that, assuming, but without deciding, this complainant is required by the Maryland law to comply with its provisions, what the complainant may have done or may do in Maryland is not void. The complainant is only prohibited from access to the state courts. It cannot be ousted of its right to resort to the federal courts if jurisdiction otherwise exists. That principle has been clearly set forth in David Lupton's Sons Co. v. Automobile Club of America, 225 U. S. 489, 32 S. Ct. 711, 56 L. Ed. 1177, Ann. Cas. 1914A, 699.

The bill of complaint is adequate in so far as jurisdictional averments respecting diversity of citizenship are concerned, and also respecting the amount in controversy, whether we apply the test of the value of the trademark to the complainant, or the extent of the damage which defendant is alleged to have caused.

The conclusion of the court, therefore, is that complainant is entitled to an injunction as prayed. A decree will be signed in accordance with this opinion.