**H. D. LEE MERCANTILE CO. v. J. C. PENNEY CO.**

**No. 57.**

District Court, W. D. Missouri, W. D.

Nov. 17, 1939.

180

Charles M. Blackmar and Ralph M. Jones (of Michaels, Blackmar, Newkirk, Eager & Swanson), both of Kansas City, Mo., for plaintiff.

Chas. H. Mayer, Roscoe P. Conkling, and Floyd M. Sprague (of Mayer, Conkling & Sprague), all of St. Joseph, Mo., for defendant.

REEVES, District Judge.

This is an action for unfair competition. The plaintiff manufactures and sells overalls and other apparel and clothing for laborers at its several places of business. Its trade is nation wide.

The defendant is engaged, among other things, in the sale at retail of overalls and other apparel and clothing for laborers.

In its petition the plaintiff alleges that in December, 1928, it "adopted a distinctive design for overalls known as 'the four-in-one bib pocket', fitted with snap fasteners; that since on or about August 14th, 1929 said pocket has been crimped and mechanically folded with rounded corners at the bottom of the pocket; that said pocket was stitched with heavy thread in a manner to prominently outline the distinctive features of The H. D. Lee four-in-one pocket, so that the H. D. Lee overall was easily identified as such by visual inspection; * * *"

There is a further allegation that the plaintiff has continued the manufacture of such distinctive design and that, for the purpose of furthering the sale of its overalls, it has spent several hundred thousand dollars in advertising. By the long continued use of such design, and by extensive advertising it is asserted that "said four-in-one bib pocket overalls became identified with the goods of The H. D. Lee Mercantile Company and with that of no other manufacturer, and that said overalls were generally known to the work garment trade and to consumers; that said four-in-one pocket became known generally throughout the United States as the exclusive product of The H. D. Lee Mercantile Company."

It is then stated by the plaintiff that the defendant, after the adoption of such design, and after its continued use over a period of years, "for the purpose of competing unfairly with the plaintiff and taking advantage of the reputation of the plaintiff's overalls and to avail itself of the results of the national advertising campaign

of the plaintiff, and for the deliberate and fraudulent purpose of taking advantage of the plaintiff's product, has placed upon the market an overall in which the four-in-one bib pocket is copied and simulated so closely in size, arrangement, shape and color that to the ordinary customer the defendant's overall is so much of a deceptive imitation of the plaintiff's overall that the two are indistinguishable to the ordinary customer."

There is the further allegation that because of the fact that the defendant maintains numerous stores throughout the United States and by the use of such deception it has deprived the plaintiff of the benefits arising from its design and the profits that would accrue to it by reason of its extensive advertising. It charges, moreover, that the defendant's actions have caused deception and confusion in the public mind, and that, as a result, the defendant has been able to appropriate to itself plaintiff's good will, trade, and advertising.

These acts, it is claimed by plaintiff, constitute fraud upon it, its retail dealers, and those members of the public disposed to purchase plaintiff's product. It has therefore asked for an injunction and an accounting of profits.

The defendant denies all of the averments of the petition with respect to simulation or imitation of plaintiff's product, but admits "since about the month of March, 1937, it has sold an overall with compartment pockets on the bib thereof; that said overall has been plainly and distinctly branded with the name J. C. Penney Company, and has been sold and advertised throughout the United States as the 'Super Pay-Day Overall.'"

Upon a trial of the issues thus formulated by the pleadings it was made to appear that both parties were extensively engaged in handling overalls for laborers, both on the farm, and in the factory. The defendant did not manufacture, but sold at retail overalls of a type very similar in appearance to certain brands or types manufactured and sold by the plaintiff.

The testimony supported the averments of plaintiff's petition to the effect that a distinctive design had been worked out in the years 1928 and 1929, and that the plaintiff had expended approximately $800,-000 in introducing to the public its overall thus designed and in creating a demand, a trade, and good will for such product.

Much of the advertising of the plaintiff was by pictorial illustrations wherein plaintiff's design was made conspicuous. The plaintiff's evidence further tended to show a likeness and similarity between a type or brand of overall sold extensively by the defendant and that of plaintiff. And, moreover, there was evidence that the defendant had copied the design of the plaintiff. This proof was practically admitted by the defendant as true. One of the principal witnesses for the defendant, being a large manufacturer of the alleged offending overall sold by defendant, testified that the design of plaintiff's product had, to a degree, been copied by him in manufacturing a similar article for defendant's trade.

It is contended by the defendant that it is the right of a competitor in business to copy the appearance and design of another's article, where not protected by the monopoly of a patent, copyright or trademark registration. Furthermore, it is the defendant's contention that there were distinctive features and marks of difference between the two garments and that the defendant was careful never to deceive the public in selling its particular merchandise.

The defendant offered testimony that other manufacturers and dealers sold a garment with a design similar to that of plaintiff.

Additional facts as they may become pertinent will be stated in the course of this memorandum opinion.

1. As a preliminary to a discussion of the law, and as a postulate for a proper decision of the case, it should be stated that the substantive law of trademarks is generally regarded as a branch of the broader doctrine of unfair competition. National Geographic Co. v. Classified Geographic, D.C., 27 F.Supp. 655, loc. cit. 660; G. & C. Merriam Co. v. Saalfield, 6 Cir., 198 F. 369, affirmed 241 U.S. 22, 36 S.Ct. 477, 60 L.Ed. 868; S. S. Kresge Co. v. Winget Kickernick Co., 8 Cir., 96 F.2d 978, loc. cit. 988; Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713.

Apparently the statutory law of trademarks is intended to provide a monopoly in the use of words, signs or symbols, whereas under the common law a competitor might have used such words, signs or symbols under circumstances that would not impinge upon the rights of the proprietor.

182

In other words, a trademark, like a patent or a copyright, could not be used at all without the consent of the proprietor or owner, whereas, under the common law, a dealer could simulate the trademark of a competitor, provided he did so "with sufficient distinguishing marks normally to prevent the otherwise normally resulting fraud." Merriam Co. v. Saalfield, 6 Cir., 198 F. 369, loc. cit. 373.

■ It would follow from the above, by an analogy of reasoning, that the same rule of law applicable to trademarks should apply in cases of unfair competition.

■ Another rule which should be kept in mind is that the law of unfair competition is intended to prevent fraud and deceit. 63 C.J. Section 26, p. 330.

And, that, with the complexities of business and the multiplying of distinctive features on articles of trade as a necessary incident of competition, the courts have been compelled to widen the scope of protection in the field of unfair competition, 63 C.J. Section 100, p. 390. And this has been done because the essence of unfair competition is fraud and deceit. Finchley, Inc. v. Finchly Co., D.C., 40 F.2d 736, loc. cit. 738.

2. With the foregoing in mind it may now be determined if the defendant has, by its action, practiced deceit and fraud upon plaintiff and the public.

■ Fraud, as has been well said, is "protean." Its course is uncertain and deceptive and oftentimes its vermiculations are not easily discernible either by the victim or the perpetrator. The law does not impose upon one whose rights have been transgressed the necessity of showing actual deception in cases of this kind. It is sufficient, if it be made to appear that deception will follow the use of an article or design under a given system or set of circumstances. Charles Broadway Rouss, Inc. v. Winchester Co., 2 Cir., 300 F. 706, loc. cit. 723; Rice & Hutchins v. Vera Shoe Co., 2 Cir., 290 F. 124; Gillette Safety Razor Co. v. Triangle Mechanical Lab. Corp., D.C., 4 F.Supp. 319.

■ 3. An inspection of the design employed by the defendant on its article of merchandise discloses a confusing similarity to that of the plaintiff, although upon close inspection differences could be easily pointed out. The general aspect and appearance was the same. However, this discussion becomes unnecessary for the reason that the defendant's manufacturer frankly admitted that the design had been copied.

Representatives of the plaintiff had gone to several of the retail stores of the defendant. In each instance such representative was wearing one of plaintiff's overalls, and asked for a similar garment at the store of the defendant. Without hesitation the clerk in charge produced an overall carried in stock by the defendant and which the clerk claimed to be similar. Only one conclusion could be reached from these transactions and that is that there was so much similarity as to confuse and deceive the public. The authorities are uniform under such circumstances and the briefs of both parties are to the same effect.

The important case of Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S. Ct. 109, 114, 83 L.Ed. 73, was cited as decisive of the issues here involved. While the Supreme Court in that case held that there was not unfair competition, yet the court said:

"Kellogg Company was free to use the pillow-shaped form, subject only to the obligation to identify its product lest it be mistaken for that of the plaintiff."

The court further said in discussing the use of the name " 'Shredded Wheat' and the pillow-shaped biscuit * * *. Fairness requires that it be done in a manner which reasonably distinguishes its product from that of plaintiff. * * * The obligation resting upon Kellogg Company is not to insure that every purchaser will know it to be the maker but to use every reasonable means to prevent confusion."

The court completely exonerated the Kellogg Company by saying:

"There is no evidence of passing off or deception on the part of the Kellogg Company; and it has taken every reasonable precaution to prevent confusion or the practice of deception in the sale of its product."

■ 4. Since from this record it fully appears that the defendant has imitated and simulated plaintiff's design, it now becomes pertinent to inquire whether the defendant "has taken every reasonable precaution to prevent confusion or the practice of deception in the sale of its product."

■ The defendant has attached to its brand or type of overall which imitates

plaintiff's design, a label, which contains the legend that that particular design is sold by the defendant. It does not make clear that the article is not or was not manufactured by the plaintiff. This was not sufficient to apprise the public that it was not plaintiff's article or product. The distinguishing features or marks of difference pointed out by the defendant at the trial were insufficient to inform the public of the facts. These marks, according to the testimony, did not prevent the public from deception, nor, according to the testimony, were they intended to avoid deception. It is true that, when the matter was baldly and acutely presented to a clerk for the defendant on one or two occasions, definite statements were made that the overall then discussed was not the product of the plaintiff.

As indicated by counsel, the cases on the subject of unfair competition are almost numberless. But, whether such decisions were rendered by the national or the state courts, they are of the same tenor and effect and are in line with the Kellogg Company case, supra. For instance, note the language of Chief Justice Holmes (later Mr. Justice Holmes), in Flagg Mfg. Co. v. Holway, 178 Mass. 83, 59 N.E. 667. This was the zither case. A patent had expired, and, on the question of unfair competition, Chief Justice Holmes said:

"In the absence of a patent the freedom of manufacture cannot be cut down under the name of preventing unfair competition. * * * The plaintiff's right can be protected sufficiently by requiring the defendant's zithers to be clearly marked so as to indicate unmistakably that they are the defendant's and not the plaintiff's goods. This is the relief which the master found to be proper, and we are of opinion that he was right. To go further is to save the plaintiff from a competition from which it has no right to be exempt."

The same rule was announced in the case of George G. Fox Co. v. Best Baking Co., 209 Mass. 251, 95 N.E. 747, 749, where, in discussing the shape of bread loaves upon an issue of unfair competition the court said:

"* * * that the defendants can use that shape of loaf if they take such precautions as will prevent their bread from being taken for the plaintiff's bread."

The defendant's able attorney succinctly stated the law in his brief as follows:

"The rule of law that any one is free to copy the form of his competitor's unpatented article, subject only to the obligation to use reasonable care to identify his own product so as to prevent confusion, as stated by Judge Holmes in the Flagg case, and as recently restated by Mr. Justice Brandeis in the Kellogg case, has always been followed by the Eighth Circuit Court of Appeals."

While both parties have cited and liberally quoted from the authorities, an unvarying rule, as above indicated, runs through them all.

5. There was evidence to the effect that another dealer, as competitor, had also imitated the design of the plaintiff. If the plaintiff enjoys a right in its design (and such must be the finding), then the defendant would not be justified in impinging upon the rights of plaintiff because others were doing so.

6. Another point that should be mentioned is that the design in this case is nonfunctional. It partakes of the nature of a trademark. Even in cases where the design or arrangement was functional, the courts have uniformly required a competitor to exercise care to avoid deceiving the public.

In functional or utilitarian cases the competitor was to a degree compelled in the free use of a given article to use the same design or shape, but even then he was required to show that it was his own product. In this case the defendant can avoid using plaintiff's design altogether and at the same time procure identical functional results. The fact that defendant imitated a non-functional design argues strongly that it was for the purpose of appropriating plaintiff's good will.

Without prolonging this discussion, it should be ruled that the plaintiff had acquired a right to the use of its distinctive design; that the defendant had copied such design and used same without taking reasonable precautions to advise the public of the fact. Under such circumstances the plaintiff is entitled to an injunction and an accounting of the profits.

Counsel for plaintiff will prepare and present an appropriate decree.