## PURE OIL CO. v. PURITAN OIL CO., Inc.

### No. 256 Civil.

District Court, D. Connecticut.

May 12, 1941.

Additional Opinion May 31, 1941.

Kelly Bell, of Chicago, Ill. (Gross, Hyde & Williams, of Hartford, Conn., and Vinson, Elkins, Weems & Francis, of Houston, Tex., on the brief), for plaintiff.

George H. Cohen and Joseph Ress, both of Hartford, Conn. (Naaman Cohen, of Hartford, Conn., on the brief), for defendant.

CLARK, Circuit Judge (sitting as District Judge pursuant to statutory designation).

The plaintiff in this action, The Pure Oil Company, is a producer, refiner, and distributor of gasoline and other petroleum products, selling its products to motorists through filling stations in at least twenty-five states east of the Rocky Mountains. At the present time, however, it does not distribute gasoline or other products through filling stations in Connecticut. In fact, its only sales in this State are of industrial and lubricating oils and greases to industrial concerns, not bought for or used in automobiles.

The defendant owns and operates a single filling station in Hartford, Connecticut, through which it sells lubricating oils and greases under the nationally advertised trade-marks of their producers, and gasoline under the trade-mark, "Pure Gasoline."

Plaintiff, alleging the ownership of several trade-marks registered under federal law, brought this action to enjoin defendant's use of the word "Pure" in connection with the sale of its gasoline and of the name "Puritan," and for damages and an accounting. It claims protection under the Federal Trade-Marks Act, 15 U.S.C.A. § 81 et seq., and under the common law of unfair competition, and alleges federal jurisdiction by reason of the Federal Act and of the diverse citizenship of the parties. It alleges that it is an Ohio, and defendant a Connecticut, corporation, and that the matter in controversy exceeds $3,-000, exclusive of interest and costs. Defendant in its answer admitted its conduct of the business in question, notwithstanding plaintiff's notice to desist, and either denied, or asserted lack of knowledge of, all the other allegations of the complaint.

It affirmatively appears, however, that defendant's use of the word and name alleged to be an infringement of plaintiff's rights is solely in connection with its operation of its own filling station in Hartford and its sale of motor fuels and oils from that station to persons making purchases on the spot. Clearly this is not a use of the infringing symbols in interstate commerce, and the claim under the Federal Act must therefore be dismissed. United States Printing & Lithograph Co. v. Griggs, Cooper & Co., 279 U.S. 156, 49 S.Ct. 267, 73 L.Ed. 650; Youngs Rubber Corp. v. C. I. Lee & Co., 2 Cir., 45 F.2d 103.

Turning to the alternate ground of jurisdiction, the question at once arises as to whether or not the matter in controversy is of a value of more than $3,000. On the trial, plaintiff declined to offer any proof whatsoever of damage to its business occasioned by defendant's alleged wrong; and when defendant offered to prove in rebuttal of damages that it had continuously operated at a loss, plaintiff renounced its prayer for damages and an accounting, and stood merely on its prayer for an injunction. It was further shown, however, in other connections, that defendant's average sales through its single station had been at the rate of 200,000 gallons of gasoline per year, and that at least 95 per cent, or practically all, of these sales were made to residents of the City of Hartford. There was no showing of the quality of defendant's service.

On these facts it cannot be maintained that plaintiff has sustained injury through a diversion of its business, for the geographical market of a filling station is necessarily so localized that few motorists would ever practically weigh the advantages of being served by one filling station in Hartford or by another in New York City. Of course, a wrongful diversion of business is not an essential part of an action for unfair competition, Yale Electric Corp. v. Robertson, 2 Cir., 26 F.2d 972, but is one of the most easily calculable elements of damages. In the absence thereof the mere assumption of power by one merchant over the reputation of another through an

unjustified appropriation of the latter's name or marks may be a wrong, but it carries with it definite damage to the latter only if the former's service is of lower quality, or if his use of the name destroys what would otherwise be the uniqueness of its associations. It does not appear that defendant's commodities are of lower quality or its service less efficient than plaintiff's. But assuming, arguendo, that defendant's service is poor, it is at least doubtful that enough Pure Oil customers or prospective customers call at defendant's station so as to cause injury to plaintiff's reputation to the extent of $3,000. If this is so, and if such injury, present and prospective, is the correct measure of the amount in controversy, Winchester Repeating Arms Co. v. Butler Bros., D.C.N.D.Ill., 128 F. 976; Draper v. Skerrett, C.C.E.D. Pa., 116 F. 206; Griggs, Cooper & Co. v. Erie Preserving Co., C.C.W.D.N.Y., 131 F. 359, it obviously is not sufficient here to support the jurisdiction of a federal court, and the second ground of jurisdiction must also fail.

This conclusion is not shaken by reference to statements that the amount in controversy in an action for unfair competition is the value of the mark, name, or good will sought to be protected. Lambert v. Yellowley, 2 Cir., 4 F.2d 915, 918, affirmed 272 U.S. 581, 47 S.Ct. 210, 71 L.Ed. 422, 49 A.L.R. 575; Harvey v. American Coal Co., 7 Cir., 50 F.2d 832, 834, certiorari denied 284 U.S. 669, 52 S.Ct. 43, 76 L.Ed. 566; Ury v. Mazer Cigar Mfg. Co., 8 Cir., 253 F. 551; Wisconsin Electric Co. v. Dumore Co., 6 Cir., 35 F.2d 555, 556, certiorari dismissed 282 U.S. 813, 51 S.Ct. 214, 75 L.Ed. 728. In all of these cases it seems obvious that the court considered the entire value of the good will to be threatened by the alleged infringement, and that the value of the good will was thus exactly equivalent to the amount of the present and prospective damage. The significance of the statement in each case was that the amount in controversy was not to be taken as limited by the amount of damages already accrued, but should include those reasonably to be expected to accrue in the future. This is equally obvious from the citation in the Dumore case of Hunt v. New York Cotton Exchange, 205 U.S. 322, 333, 27 S.Ct. 529, 51 L.Ed. 821, and from the citation in both the Dumore and Lambert cases of Bitterman v. Louisville & N. R. Co., 207 U.S. 205, 224, 28 S.Ct. 91, 52 L.Ed. 171, 12 Ann.Cas. 693. See also Hennessy v. Herrmann, C.C.N.D.Cal., 89 F. 669; and Symonds v. Greene, C.C.S.D.N.Y., 28 F. 834.

To measure the amount in controversy by reference to the value of certain property, irrespective of the extent of injury to it, would be entirely arbitrary, and inconsistent with the general principle by which the amount in controversy is defined as the "value of the object to be gained" by the action. Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U.S. 121, 125, 36 S.Ct. 30, 32, 60 L.Ed. 174. Compare KVOS, Inc. v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183; Central Mexico Light & Power Co. v. Munch, 2 Cir., 116 F.2d 85, 87, and authorities there cited; Carroll v. Somervell, 2 Cir., 116 F.2d 918.

Finally it may be suggested that the court at least acquired jurisdiction to pass on the federal question of trade-mark infringement, although the allegations and proof were insufficient to establish a right of recovery, Siler v. Louisville & N. R. Co., 213 U.S. 175, 192, 29 S.Ct. 451, 53 L.Ed. 753; Binderup v. Pathe Exchange, 263 U.S. 291, 305-308, 44 S.Ct. 96, 68 L.Ed. 308; Moore v. New York Cotton Exchange, 270 U.S. 593, 609, 46 S.Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370, and that it should retain that jurisdiction to pass on the claim of unfair competition as having arisen out of the same state of facts. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148.

It is doubtless true that the facts supporting an action for trade-mark infringement under the federal statute and one for unfair competition are substantially the same, although the former requires a showing of a use in interstate commerce. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 325, 59 S.Ct. 191, 83 L.Ed. 195; cf. Kasch v. Cliett, 5 Cir., 297 F. 169. But whether the court acquired jurisdiction in the first place unquestionably depends on the further question whether the federal claim was substantial. Hurn v. Oursler, supra, 289 U.S. at page 242, 53 S.Ct. 586, 77 L.Ed. 1148.

Certainly there was and could be no substantial claim here that defendant's infringing use was in interstate commerce. The complaint alleged only that defendant operated a filling station in the City of Hartford, in connection with which these

infringing words were used, and the proof has made the restricted area of defendant's business clearly apparent. Indeed, plaintiff has never suggested the contrary.

■ Hence there can be no substantial federal claim here unless plaintiff may seriously contend that the infringing use need not be in interstate commerce in order to create a claim under the Federal Act. It might once have done so, for the clause of 15 U.S.C.A. § 96 requiring the infringing use to be in interstate commerce is not found in other remedial sections, 15 U.S.C.A. §§ 97, 99 et seq. But this possibility has long been laid to rest by the Supreme Court, United States Printing & Lithograph Co. v. Griggs, Cooper & Co., supra, by the Second Circuit, Youngs Rubber Corp. v. C. I. Lee & Co., 2 Cir., supra, and by the First, Fifth, Eighth, and Ninth Circuits. Edgar P. Lewis & Sons, Inc. v. Mars, Inc., 1 Cir., 62 F.2d 406, certiorari denied 288 U.S. 611, 53 S.Ct. 405, 77 L.Ed. 985; Kasch v. Cliett, 5 Cir., supra; Ironite Co. v. Guarantee Waterproofing Co., 8 Cir., 64 F.2d 608; Horlick's Malted Milk Corp. v. Horluck's, Inc., 9 Cir., 59 F.2d 13. The same result was reached under the similar provisions of the Act of 1881, 21 Stat. 502. Warner v. Searle & Hereth Co., 191 U.S. 195, 24 S.Ct. 79, 48 L.Ed. 145. No opinion has been found to the contrary, nor any real attack on the Griggs rule since that case was decided.

In the face of such unequivocal and unwavering authority, I do not believe that plaintiff could have seriously contended against this rule, or have made a substantial claim under the Federal Act. Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062, seems directly in point. There several employers sought to enjoin certain activities of a labor union as illegal both at common law and under the Sherman Act, 15 U.S.C.A. §§ 1–7, 15. Their complaint showed that the defendant's common aim was to establish a closed shop in the local construction industry, in which all parties were engaged, and that striking and boycotting were the means employed. It showed further that interstate commerce was affected only by an incidental interruption of the importation into the state of construction materials used by the plaintiffs in their business. That such facts constituted no restraint on interstate commerce within the meaning of the Sherman Act had been previously decided in United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762, and United Leather Workers v. Herkert & Meisel Trunk Co., 265 U.S. 457, 44 S.Ct. 623, 68 L.Ed. 1104, 33 A.L.R. 566. Dismissal of the non-federal question was said to follow from the fact that "the federal question presented was plainly unsubstantial, since it had, prior to the filing of the bill, been foreclosed by the two previous decisions last named, and was no longer the subject of controversy." Levering & Garrigues Co. v. Morrin, supra, 289 U.S. at page 108, 53 S.Ct. at page 551, 77 L.Ed. 1062. Compare Shulman and Jaegerman, Some Jurisdictional Limitations on Federal Procedure, 45 Yale L.J. 393, 401.[1]

■ Defendant has put the jurisdictional allegations of the complaint in issue, and it was incumbent upon the party invoking the court's power to produce evidence of the facts on which its exercise might be based. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; Hague v. C. I. O., 307 U.S. 496, 507, 59 S.Ct. 954, 960, 83 L.Ed. 1423; Central Mexico Light & Power Co. v. Munch, supra. Therefore, as the case now stands, I think the complaint must be dismissed for lack of jurisdiction. Since, however, it was tried and briefed without specific attention to the jurisdictional point, I deem it appropriate to, and will, delay entry of the order for ten days to give plaintiff time to request

[1] Warner v. Searle & Hereth Co., supra, 191 U.S. at pages 205, 206, 24 S.Ct. 79, 48 L.Ed. 145, is not to the contrary. There a bill which had failed to allege an infringing use of a valid trade-mark in foreign commerce was said nevertheless to invoke appellate jurisdiction of a federal question. But the Trade-Marks Act of 1881 was even less clear, in requiring such use, than the present act; and at the time of the Warner decision, there was no settled interpretation of its meaning. Ryder v. Holt, 128 U.S. 525, 9 S.Ct. 145, 32 L.Ed. 529, was said to hold "in effect" that the infringing use must be in interstate commerce, Warner v. Searle & Hereth Co., supra, 191 U.S. at page 206, 24 S.Ct. 79, 48 L.Ed. 145; but the opinion in that case does not specify infringing use as distinguished from plaintiff's use, and the question had remained sufficiently open that the entire Warner opinion was devoted to its resolution. The issue was therefore substantial.

further consideration of this issue if it believes it can controvert the result here reached.

### Additional Opinion.

Plaintiff has now filed a brief, wherein, without contesting the conclusion that no jurisdiction over trade-mark infringement was shown, it ably argues "that a large national or semi-national company always has $3,000 worth of its good will at stake, no matter how small or limited a concern the defendant may be operating if there is danger of confusion between the two." It urges that the amount in controversy is measured by the total value, wherever found, of the right for which protection is sought, not the value of so much of it as is threatened by defendant's acts, and further that even the value of the right threatened here exceeds the jurisdictional amount.

To the first point, plaintiff cites cases where an injunction was granted against unfair competition, although the threat of actual injury appears to have been small. In some the jurisdictional issue is not mentioned, R. H. Macy & Co., Inc. v. Macy's Drug Store, Inc., 3 Cir., 84 F.2d 387; Buckspan v. Hudson's Bay Co., 5 Cir., 22 F.2d 721, certiorari denied 276 U.S. 628, 48 S.Ct. 321, 72 L.Ed. 739; The Governor, etc. v. Hudson Bay Fur Co., D.C.Minn., 33 F.2d 801; Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973, though in others it is, Del Monte Special Food Co. v. California Packing Corp., 9 Cir., 34 F.2d 774; Indian Territory Oil & Gas Co. v. Indian Territory Illuminating Oil Co., 10 Cir., 95 F.2d 711, certiorari denied 305 U.S. 607, 59 S.Ct. 67, 83 L.Ed. 386; Great Atlantic & Pacific Tea Co. v. A. & P. Radio Stores, Inc., D.C. E.D.Pa., 20 F.Supp. 703. As to all of these it is clear that the plaintiff is actually carrying on a very substantial business in the district of suit.[2] None, therefore, felt the need of stating the issue which is presented here, whether the value of all of plaintiff's good will, viewed as a national or semi-national business, or whether that part of it subject to threat of injury by defendant's practices is the true measure of the amount in controversy.

At any rate, however they would treat that issue if before them, it seems to me the Supreme Court decisions, especially the recent ones, require the result herein reached. The rule stated in the opinion is substantially a paraphrase of McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135, in which jurisdiction over an action to enjoin enforcement of a regulatory state statute was declined on the ground that plaintiff had showed only the value of the business, not the extent of the injury threatening it (298 U.S. at page 181, 56 S.Ct. at page 781): "The value or net worth of the business which respondent transacts in Indiana is not involved save to the extent that it may be affected by the incidence of the statutory regulation. The object or right to be protected against unconstitutional interference is the right to be free of that regulation. The value of that right may be measured by the loss, if any, which would follow the enforcement of the rules prescribed. The particular allegations of respondent's bill as to the extent or value of its business throw no light upon that subject. They fail to set forth any facts showing what, if any, curtailment of business and consequent loss the enforcement of the statute would involve." See also Connor v. Rivers, D.C.N.D.Ga., 25 F.Supp. 937, affirmed 305 U.S. 576, 59 S.Ct. 359, 83 L.Ed. 363; 49 Yale L.J. 274.

Nor is there any reason to believe that the rule for determining the amount in controversy applicable in unfair-competition cases is different from the rule applied in other cases. KVOS, Inc., v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183, was a suit to enjoin unfair competition. The bill sought "redress for damage to the respondent's [Associated Press] business and for damage to the business of some or all of its members." 299 U.S. at page 277, 57 S.Ct. at page 200. There could have been no question that the total value of the business of any one of several members affected greatly exceeded $3,000. Yet the bill was dismissed because defendant's practices were not shown to damage any of the members in that amount.

It may be noted further that, in Del Monte Special Food Co. v. California Pack-

---

[2] The only cited case where this seems not the fact is Stork Restaurant v. Marcus, D.C.E.D.Pa., 36 F.Supp. 90. There the court found the jurisdictional amount, since the plaintiff's restaurant in New York was extensively advertised in, and patronized by people from, Philadelphia, and hence a restaurant by the same name in Philadelphia substantially injured the plaintiff's good will.

ing Corp., supra, and perhaps in others of the cited cases, there appears to have been reason to believe that defendant's business would expand, and that its infringing use would become progressively more injurious. That inference as to the *threatened,* rather than the *present,* harm is not available here, because defendant has only a one-station business, has not made a profit on it, and gives no indication whatever of acquiring other stations.

■ In support of its second point, plaintiff suggests that the injury to it would increase in the future if it should re-establish its Connecticut business, and cites United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141, and Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713. Those cases, however, concern protection for a registered trade-mark, not the jurisdictional issue here present. Moreover, though it be conceded that plaintiff has a right to expand into Connecticut and to have its good will protected against the day it may choose to do so, yet that is far from showing that such expansion is probable enough to give any substantial value to its Connecticut good will. The only evidence offered relative to its territorial program indicated a program of contraction, rather than expansion, and there was no evidence that it ever intended to resume operations in Connecticut. At best, the probability of injury to plaintiff in this respect is highly speculative, and plaintiff has failed to sustain the burden of proof imposed upon it by McNutt v. General Motors Acceptance Corp., supra.

■ Plaintiff claims possible injury in two other ways. In Hartford there are representatives of large enterprises, such as the Fuller Brush Company and the United States Steel Corporation, which sell their products to plaintiff, and of many others which buy oil from plaintiff in Connecticut. These might be misled by defendant's use of the "Pure" trade-mark. Secondly, there was testimony, and one might accept the fact without proof, that some motorists from territories serviced by plaintiff (among other concerns) pass through Hartford and perhaps buy from defendant's station, and that many residents of Hartford motor into such other territories and perhaps buy from plaintiff's stations. Plaintiff's reputation might perhaps be injured with motorists who have never actually traded with defendant, by reason of

poor service. But in all this there is no suggestion of substantial injury to the amount of $3,000. There was neither allegation nor proof that defendant's service is inferior or of low quality. True, such proof is not an essential to a showing of a right to relief, Yale Electric Corp. v. Robertson, 2 Cir., 26 F.2d 972, if the court has jurisdiction; but it does bear directly on the issue of the extent of injury. So an owner of physical property has a right that it be free from a technical trespass, but that right cannot be enforced in a federal court without a showing that the threatened injury is of the jurisdictional amount. Colony Coal & Coke Corp. v. Napier, D.C. E.D.Ky., 28 F.Supp. 76.

It must be emphasized that this is not a question of plaintiff's right to judicial relief, for the state courts are open freely to it, but whether or not plaintiff has sustained its burden of showing that it comes within the peculiar, though historic, limitations of federal jurisdiction. And though lawyers have been accustomed in the past to think of unfair competition and trade-mark infringement as interwoven parts of the same subject, yet the present emphasis upon state law in the federal courts forces for good or ill the former into the local state mold, while the latter remains a national matter. Chafee, Unfair Competition, 53 Harv.L.Rev. 1289, 1299.

The clerk is directed to enter judgment forthwith dismissing the complaint, with costs to the defendant.