### VON MUMM et al. v. WITTEMANN et al.

(Circuit Court, S. D. New York. March 17, 1898.)

1. TRADE-MARKS AND TRADE-NAMES—LABELS ON WINE BOTTLES—INFRINGEMENT.
Where complainants have long used characteristic labels to distinguish a particular brand of champagne in bottles, and which has been long and favorably known, defendants will be restrained from using labels of the same size and color, sufficiently corresponding in general appearance to deceive the ordinary customer, and manifestly designed to enable unscrupulous persons to palm off a spurious article on the public.

2. SAME—COLORED CAPSULES ON WINE BOTTLES—TERMS DENOTING QUALITY.
Every possible color for capsules having been appropriated by proprietors of the various brands of champagne, and the term "Extra Dry" having been so long and generally used to denote character and quality, the use by defendants of a capsule of the same color as that used by complainants, with the words "Extra Dry" thereon, as used by complainants, though used with fraudulent intent, cannot be enjoined.

This was a suit in equity by Peter Hermann Von Mumm and others against Rudolph A. Wittemann and others for infringement of a trademark and unfair competition in trade.

Rowland Cox, for complainants.
Straley, Hasbrouck & Schloeder, for defendants.

TOWNSEND, District Judge. A study of defendants' "Illustrated Catalogue and Price List of Supplies and Outfits for the Wholesale Bottling Trade" shows the character of one branch of their business. The green and red ginger ale diamond label, with its "Original Supe-

rior Dublin and Belfast" lettering, "Napoleon Empereur," "None Genuine without the Above-Registered Trade-Mark," and the oblong label of "Guinness Extra Foreign Stout, Dublin," are striking samples of the labels with which they "are prepared to serve the trade." The complainants herein, constituting the firm of G. H. Mumm & Co. of Rheims, France, are the owners of a brand of champagne wine which has long been favorably known as "Mumm's Extra Dry," and sold in bottles having characteristic labels on the body and neck, and a pink capsule. The defendants advertise and have sold neck and body labels bearing the name "S. F. Munn" and "Perle de la Champagne," of the same color and size as those of complainants, and sufficiently corresponding in general appearance to deceive the ordinary purchaser. It is unnecessary to describe the various devices employed on the imitation labels in order to simulate the genuine ones. It is manifest that they were designed for the purpose of enabling unscrupulous persons to palm off a spurious article upon the public, and that they are clearly within the prohibitions of law against fraud and unfair trade, whether by direct means or through the indirect, but no less reprehensible, methods of contributory infringement. The complainants originated, and have for many years used, also a rose or brilliant copper colored capsule embossed with the name "G. H. Mumm & Co.," as a further protection against fraudulent imitations. The court takes judicial notice of the fact that champagne, as ordinarily served from an ice chest or in coolers, is liable to lose its labels before the bottle is shown to the customer. In such cases the capsule is the only easily available means of identification. The defendants have made an exact copy of complainants' capsule except that they have substituted "Extra Dry" for the name "G. H. Mumm & Co." I think the fraudulent intent herein is just as manifest as in the simulated labels. But a court of equity cannot prevent a person from doing a lawful act merely because it appears to have been done with fraudulent motive. It is proved that the proprietors of the various brands of champagne respectively use such capsules of every possible color. To exclude a person from using a particular color therefore might eventually result in preventing him from using any color whatever, and thus deprive him of this necessary protection against fraud. Furthermore, it appears from the evidence that other makers of champagne use similar copper-colored capsules on their bottles. But complainants strenuously contend that the term "Extra Dry" has been substantively used to denote their particular brand of wine. It may be true that the deservedly high reputation of this class of complainants' wine has led the public to demand it, and expect to receive it to the exclusion of others in the majority of instances. But the designations "Dry" and "Extra Dry" so manifestly denote character and quality, and have been so long and generally used for that purpose, that even such general public acquiescence is insufficient to deprive others of the right to produce and sell the same quality of wines, and to designate it by the same name. The legal principle that every man is entitled to the use of such words of quality need not be discussed. It is unfortunate that the complainants have selected a term of this kind to designate their

product, and have placed it upon a capsule having no distinguishing characteristic other than their name and a plain color, and have thereby put it in the power of unscrupulous imitators to appropriate a portion of the fruits of their industry. But, although the use of a capsule is admittedly necessary to prevent fraud, yet, inasmuch as the color thereof does not necessarily imply the brand of a particular maker, and all colors have already been appropriated, and the term "Extra Dry" in fact denotes, and by long usage has come to denote, quality, proof of the sale of a rose-colored capsule with the words "Extra Dry" only thereon would not justify this court in enjoining such a sale without other proof of fraudulent intent. The facts herein do not bring the defendants within the rule as stated by Judge Benedict in Von Mumm v. Frash, 56 Fed. 830. I concur in the reasoning and conclusions of Judge Coxe in Mumm v. Kirk, 40 Fed. 589. Let a decree be entered for an injunction against the use of fraudulent labels.