STANDARD BREWERY CO. OF BALTIMORE CITY v. INTERBORO
BREWING CO., Inc.

(Circuit Court of Appeals, Second Circuit. January 11, 1916.)

No. 10.

1. TRADE-MARKS AND TRADE-NAMES ☞45—REGISTRATION OF TRADE-MARK—
RIGHTS ACQUIRED.

The rights which a person obtains by registration of a trade-mark under the federal statutes are coterminous with the territory of the United States.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 53, 59; Dec. Dig. ☞45.]

2. TRADE-MARKS AND TRADE-NAMES ☞35—CONVEYANCES—ASSIGNABILITY OF
TRADE-MARKS.

In 1890 W. registered the words "Bismarck Brau" as a trade-mark for beer, but neither he nor his employer, nor the E. Co., with which his employer amalgamated, ever sold beer under such name. In 1894 the E. Co. assigned to H. & Co. an exclusive license under this registration to use the trade-mark in the New England States, and H. & Co. and its successor sold beer under such trade-mark until 1904, when it discontinued sales. In that year complainant commenced selling beer under the name "Bismarck," and in 1907 registered that word as its trade-mark, and thereafter continuously sold beer under such trade-mark. When the trade-mark was registered, it was the only party selling beer under that name. Some time prior to the registration it obtained from the E. Co. an assignment of the right to use such name, except in the New England States. In 1913 defendant commenced selling under the name "Bismarck" and later obtained from H. & Co.'s successor a license to use the trade-mark, except in New England. Held, that defendant acquired no trade-mark or title to the W. registration, and had no defense to a suit for infringing complainant's trade-mark, as the assignments from the E. Co. to H. & Co., and from H. & Co.'s successor to defendant, were merely attempts to transfer a name without any business or good will, and effected nothing.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 39, 40; Dec. Dig. ☞35.]

3. TRADE-MARKS AND TRADE-NAMES ☞21—RIGHT TO REGISTRATION—PERSONS
ENTITLED.

While complainant acquired nothing by its license from the E. Co., it was entitled to registration of its trade-mark at the time it was registered, and had a valid title to its registered trade-mark, as no one else was selling beer under such trade-mark, and it had been an exclusive dealer for over two years.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 24; Dec. Dig. ☞21.]

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by the Standard Brewery Company of Baltimore City against the Interboro Brewing Company, Incorporated. From a decree dismissing a bill in equity to restrain the infringement of a registered trade-mark, plaintiff appeals. Reversed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

A. Cox and Robert W. Byerly, both of New York City, and E. Walton Brewington, of Baltimore, Md., for appellant.

W. H. Small, of New York City (Henry A. Rubino and Herman C. Rubino, both of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. [1] Apparently the District Judge reached the conclusion that complainant was entitled to continue selling under its trade-mark within its own territory, Baltimore and vicinity and the West Indies while defendant was free to sell under the same trade-mark in its territory, New York and vicinity. Much the same result was accomplished, by applying the doctrine of laches, in the case of Carroll v. McIlvaine. Our opinion therein will be found in 183 Fed. 22, 105 C. C. A. 314. But in this case we are dealing with no question of laches in moving against the defendant as we were in the Carroll Case. Trade-mark registered under the statutes of the United States is declared upon. The rights which a person obtains by registration of a trade-mark under those statutes are coterminous with the territory of the United States.

Upon an application filed January 5, 1906, and which stated that the trade-mark had been used continuously in its business since July 1, 1903, complainant on March 15, 1907, obtained a registered trade-mark for the name "Bismarck" applied to packages of beer. The evidence shows that certainly since July, 1904, plaintiff has been selling its beer continuously under that name. The evidence also indicates that, except for defendant's sales to be referred to later, no beer was sold anywhere in the United States subsequent to May, 1904, under the name "Bismarck." We have, then, a registered United States trade-mark issued to an individual at a time when such individual was and for some time had been the only individual selling under that trade-mark; subsequent to the issue the same individual continues selling his goods under that mark for several years, with no one else selling goods under the same mark; finally, six years after registration, defendant begins selling under such mark. Manifestly a prima facie case of infringement of the statutory trade-mark is made out. It is in order, then, to consider the defenses.

In 1912 defendant decided to use the name "Bismarck" as trade-mark for beer of its brewing. Quite naturally it apprehended that a similar use of the name of the great Chancellor had been made before, and undertook to ascertain if this were so. Its investigation seems to have been quite carelessly conducted, because it wholly failed to discover the registration of complainant's trade-mark in the Patent Office in 1907. It did, however, discover, the registration in that office of the words "Bismarck Brau" by one Charles Weiler, of Moorestown, N. J., on December 8, 1890. Defendant tried to get into communication with Weiler, but found he was deceased, whereupon it began to market its beer as "Bismarck" in 1913. Subsequently learning of complainant's use of the trade-mark, it made a further search as to the Weiler trade-mark with the following results: Weiler was an employé of the Henry Muller Brewing Company. Apparently neither

he nor that company ever sold any beer under the trade-mark. The registration of Weiler, by mesne assignments, came into the possession of the Bergner & Engel Brewing Company, with which the Muller Company had amalgamated, but the Bergner & Engel Company has never "used the brand of beer known as Bismarck." In November, 1894, the latter company assigned to Habitch & Co. an exclusive license under this Weiler registration to use the trade-mark in the New England States. Habitch & Co. sold beer under this mark until 1900, when they amalgamated with other companies to form the Massachusetts Breweries Company. The latter company continued to sell beer under the trade-mark until May 26, 1904; since then it has discontinued sales. On May 8, 1913, defendant obtained from the Massachusetts Brewing Company a letter purporting to license defendant to use the trade-mark on condition that it would guarantee that its products would not be sold in New England.

[2] We are of the opinion that this series of transactions did not clothe defendant with title to the Weiler registration, or give it any established trade-mark. Since neither Weiler, nor the Muller Company, nor the Engel Company ever sold any beer under the trade-mark, the "exclusive license" to the Habitch Company, being merely an attempted transfer of name, without business or good will, conveyed no title. At the best its issuance might estop the Engel Company from interfering with sales by the Habitch Company. Since the Habitch Company ceased doing business in 1900, and the Massachusetts Company ceased selling beer under the trade-mark in 1904, the latter's license to defendant was merely an attempt to transfer a name without any business or good will, and effected nothing. The facts above cited do not establish a defense to the prima facie case.

[3] Defendant also attacks complainant's title to its registered trade-mark. It appears that, prior to its application for registration, complainant, wishing to use the name "Bismarck" and hearing of Weiler's registration, applied to the Engel Company and obtained from them an assignment thereof, excepting the New England States. Apparently it supposed that it thereby acquired some rights, for it at once (in 1904) proceeded to sell Bismarck beer. It had really obtained nothing by the assignment, since it purported to transfer a name only, without any business or good will. Indeed, there was no business or good will for the assignor to transfer, since neither Weiler, nor the Muller Company, nor the Engel Company had ever sold any "Bismarck beer." Thereupon complainant filed application January 5, 1906, for registration of the trade-mark "Bismarck" in its own name, on the strength of its continuous use since July 1, 1903, with the usual declaration that to the best of its knowledge no one else had any right to it. Interference was declared between its application and the Weiler registration, and eventually the registered trade-mark here sued on was granted May 19, 1907. Why this action of the Patent Office was not proper under the circumstances, and why it did not give to complainant the usual rights secured to a person who obtains such registration. we fail to see.

It is urged that the office was not fully informed as to the assignment from Engel Company to complainant with its exception of New England territory. But if everything here proved had been laid before the office, it would have been its duty under the statute to grant the registration. By the assignment from the Engel Company complainant had obtained nothing, but it showed that certainly since July, 1904, it had continuously sold "Bismarck beer" as part of its regular business. The so-called license to the Habitch Company from the Engel Company, which never had a Bismarck beer business, conveyed nothing. The sales of Bismarck beer in New England by Habitch Company ceased in 1900, and by Massachusetts Breweries ceased in May, 1904. So far as the record shows, no one else in the United States was selling beer under such trade-mark, and as exclusive dealer for over two years complainant was entitled to his registration.

The decree is reversed.