Matthias, J.
 

 The outstanding question presented by the conceded facts is whether, by the Trade-Mark Act of 1905, the plaintiff by the various registrations under its trade-mark is protected throughout the United States, or, as it has been well stated, whether the effect of that act is to project the right of protection in advance of the actual extension and establishment of trade in said commodities by the plaintiff. In the event the question just stated be answered in the affirmative, then we have the further questions whether the act of 1905, particularly Section 16 (Title 15, Section 96, U. S. Code; Section 9501, U. S. Comp. Stats.), is unconstitutional, and whether the printing and furnishing of such labels to be used in the manner stated make the defendant an infringer against whom a suit in injunction may be maintained.
 

 Upon the lesser proposition that the labels printed by the defendant, although the whole of the trademark of plaintiff is not used therein, constitute an infringement, many authorities may be cited. The general rule is that the use of the key word in the trade-mark, being the distinctive word therein, though in company with other words, constitutes an infringement if applied to articles or commodities of
 
 *155
 
 a similar character. We shall cite only a few of the cases directly in point.
 

 In the case of
 
 Saxlehner
 
 v.
 
 Eisner & Mendelson Co.,
 
 179 U. S., 19, 21 S. Ct., 7, 45 L. Ed., 60, the Supreme Court lays down the rule upon this subject as follows:
 

 “It is not necessary to constitute an infringement \ that every word of a trade-mark should be appropriated. It is sufficient that enough be taken to deceive the public in the purchase of a protected article.”
 

 This rule is applied where, as here, the label in question is attached to the vendible article of merchandise similar in character to that covered by the trade-mark registration. To the same effect is the case of
 
 President Suspender Co.
 
 v.
 
 MacWilliam
 
 (D. C.), 233 F., 433.
 

 In the case of
 
 Griggs, Cooper & Co.
 
 v.
 
 Erie Preserving Co.
 
 (C. C.), 131 F., 359, the court held:
 

 “The words ‘Home Comfort’ are an infringement of complainant’s trade-mark ‘Home Brand’ used on canned goods, the word ‘Home’ being the essential feature of it.”
 

 In the case of
 
 Griggs, Cooper & Co.
 
 v.
 
 Federal Coffee Mills Co.,
 
 46 App. D. C., 317, the court applied the rule above stated, and held that:
 

 “The words ‘Home Pride,’ as applied to coffee and teas, are so similar to ‘Home’ and ‘Home Brand,’ registered as trade-marks and applied to the same goods, as to be likely to cause confusion in trade, and are therefore not registerable as a trademark over an opposition by the registrant of the other marks.” ■
 

 • The conclusion' of the court was based upon its
 
 *156
 
 finding that the word “Home” is the distinctive mark of the title lawfully registered by GriggsCooper
 
 &
 
 Co..
 

 In the consideration of the question presented, whether the plaintiff’s registration of its trademark and the rights secured to it thereby serve to protect it in territory in advance of the actual extension and establishment of its trade there, the construction and application of the Trade-Mark Act of 1905, particularly Section 16, is required. No case has been cited construing or applying this section, and we have found no precedent to assist in the consideration and determination thereof. As heretofore stated, it is conceded that the plaintiff’s business in the commodities bearing the trade-mark in question is thus far limited to the states in the Northwest which have been enumerated and that the labels, the printing and use of which is here challenged, were for the use of business concerns located in other states. However, it is not disclosed whether the commodities of the business concerns to whom the defendant furnishes said labels, and the plaintiff’s goods, bearing its label, are sold in the same market. It has been urged by counsel for the defendant that, by the decisions of the Supreme Court of the United States in
 
 Hanover Star Milling Co.
 
 v.
 
 Metcalf,
 
 240 U. S., 403, 36 S. Ct., 357, 60 L. Ed., 713, and
 
 United Drug Co.
 
 v.
 
 Theodore Rectanus Co.,
 
 248 U. S., 90, 39 S. Ct., 48, 63 L. Ed., 141, the principle has been established that:
 

 “The adoption of a trade-mark does not, at least in the absence of some valid legislation enacted for the purpose, project the right of protection in advance of the .extension of. the trade, or operate as a
 
 *157
 
 claim of territorial rights over areas into which it thereafter may be deemed desirable to extend the trade. ’ ’
 

 The above statement is quoted from the opinion in the
 
 Rectanus case, supra.
 
 It is followed by the further statement:
 

 “And the expression, sometimes met with, that a trade-mark right is not limited in its enjoyment by territorial bounds, is true only in the sense that wherever the trade goes, attended by the use of the mark, the right of the trader to be protected against the sale by others of their wares in the place of his wares will be sustained. ’ ’
 

 It is conceded by counsel for the defendant that the court in the case just referred to did not have before it' a situation involving the registration of a trade-mark under the act of 1905. It is only claimed that the court there indicated that, when a case that does directly involve the question as to whether the registration of a trade-mark under the act of 1905 projects the common-law right in the trade-mark beyond the territory in which its trade is actually established, the court will decide the question in the negative.
 

 Although the opinion in the
 
 Hanover case, supra,
 
 is informing and instructive, it is not at all decisive of our question, for in the situation there presented none of the parties had registered a trade-mark under any act of Congress or under the law of any state. The decision therefore turned upon common-law principles of general application. Two cases were decided together. One involved questions growing out of a common-law trade-mark, abandonment, nonuser, and. estoppel, while the'other was
 
 *158
 
 a case of unfair competition by reason of imitation or simulation.
 

 It is quite obvious that tbe act of 1905 had no application in either of these cases, and did not enter into their consideration. Our question, therefore, is whether section 16 of the Trade-Mark Act of 1905 (Title 15, Section 96, U. S. Code, U. S. Comp. Stats., 9501) has the effect of projecting the right of protection in advance of the establishment of trade, and whether it is valid. Is it “the valid legislation enacted for that purpose” referred to in the
 
 Rectcmus case¶
 
 This section 16 provides as follows:
 

 ‘ ‘ The registration of a trade-mark under the provisions of this subdivision of this chapter shall be
 
 prima facie
 
 evidence of ownership. Any person who shall, without the consent of the owner thereof, reproduce, counterfeit, copy, or colorably imitate any such trade-mark and affix the same to merchandise of substantially the same descriptive properties as those set forth in the registration, or to labels * * * intended to be used upon or in connection with the sale of merchandise of substantially the same descriptive properties as those set forth in such registration, and shall use, or shall have used, such reproduction, counterfeit, copy, or colorable imitation in commerce among the several states, or with a foreign nation, or with the Indian tribes, shall be liable to an action for damages therefor at the suit of the owner thereof. ’ ’
 

 This Section 16 was an amendment of Section 7 of the Act of 1881 (21 Stats, at L., 503), the material change therein being the insertion of the words, “commerce among the several states,” whereas the act previously provided only-protection in “foreign
 
 *159
 
 commerce or commerce with Indian tribes. ’ ’ If this change does not have the effect of enlarging and extending the rights under a trade-mark, and provide greater protection than was theretofore afforded under the common law, no purpose would have, been served by the change.- This language surely ! indicates a clear' purpose to protect the registrant j of a trade-mark further than the state or states
 
 ¡
 
 wherein his business in the commodities covered by / the trade-mark is actually established.' Before the amendment, such limited protection was afforded under the uniform decisions of our courts, even where there had been no regulation under the act of Congress. There was, of course, good reason for not extending the right beyond the zone of established business, where there was no registration under the act of Congress, and in the absence of a statute specifically affording that protection, as suggested in the
 
 Rectanus case.
 
 But does not this statute provide such additional protection as was there suggested might be done? If this statute- does not afford such additional protection to the registrant of a trade-mark, the effect of the statute remains exactly the same as before, and the amendment serves no purpose whatever. This was quite a material amendment to the statute, and it should not be nullified, and the terms of the statute formerly existing restored, by. judicial construction. The change in the effect and operation of a statute to the extent of the Ghange in the language thereof must be recognized and applied by the court.
 
 County Board of Education of Hancock Co.
 
 v. Boehm, 102 Ohio St., 292, 131 N. E., 812. We have no question here of failure to use, or abandonment of the use of,
 
 *160
 
 the trade-mark privileges or of the rights conferred; nor have we a situation where there is any claim of any prior right on the part of those to whom labels were being furnished by the defendant under the Registration Act.
 

 It is our opinion that the purpose and effect of this statute was to project the trade-mark rights of the registrant and owner thereof into all the states even in advance of the establishment of trade therein, and to afford full protection to such registrant and owner.
 

 The provisions of the act of 1905 so interpreted and applied are not violative of the Federal Constitution, but are authorized by Section 8 of Article I thereof, wherein power is conferred upon Congress “to regulate commerce with foreign nations, and among the several states, and with the Indian tribes.” There is ample ground for the contention that the purpose of the passage of the act of 1905 was to put trade-marks on the same basis as patents, and to afford them like protection. In a case involving the construction of section 9 of the act of 1905, it was said by Chief Justice Taft:
 

 “It is obvious from that section and the whole of the Trade-Mark Act that Congress intended to produce a parallelism in the mode of securing these two kinds of government monopoly from the Patent Office.”
 
 American Steel Foundries
 
 v.
 
 Robertson,
 
 262 U. S., 209, 43 S. Ct., 541, 67 L. Ed., 953.
 

 Congress has necessarily taken cognizance of the increased interstate character of trade and commerce, and trade-marks would be of little value if protection could not be afforded the registrant thereof by act of Congress, and the method provided
 
 *161
 
 falls within the power conferred to regulate such commerce. It was said by Chief Justice White in
 
 United States
 
 v.
 
 Ferger,
 
 250 U. S., 199, 39 S. Ct., 445, 63 L. Ed., 936, a case involving the power of Congress to regulate commerce, that the power to regulate commerce “must include the authority to deal with obstructions to interstate commerce # * * and with a host of other acts ydiich, because of their relation to and influence upon interstate commerce, come within the power of Congress to regulate, although they are not interstate commerce in and of themselves.”
 

 For reasons that are obvious, the rule long applied relative to infringers of patents is alike applicable here, and that is that all who actively and intentionally aid and abet the infringing are equally infringers, or, as some of the decisions classify them, contributing infringers.
 
 Heaton-Peninsular Button-Fastener Co.
 
 v.
 
 Eureka Specialty Co.
 
 (C. C. A.), 77 F., 288, 35 L. R. A., 728;
 
 Von Mumm
 
 v.
 
 Wittemann
 
 (C. C.), 85 F., 966;
 
 Hennessy
 
 v.
 
 Herrmann
 
 (C. C.), 89 F., 669.
 

 Judgment affirmed.
 

 Day, Kiwkade and Jones, JJ., concur.