## ARROW DISTILLERIES, Inc., v. GLOBE BREWING CO.
### No. 2522.

District Court, D. Maryland.
Nov. 21, 1939.

Bartlett, Poe & Claggett and Robert D. Bartlett, all of Baltimore, Md., and Watson, Cole, Grindle & Watson and Harold F. Watson, all of Washington, D. C., for plaintiff.

Morton H. Rosen, of Baltimore, Md., and Mason, Fenwick & Lawrence, Charles R. Fenwick, and Edward G. Fenwick, all of Washington, D. C., for defendant.

COLEMAN, District Judge.

This is a proceeding originally begun as a suit in equity under Revised Statutes, § 4915, U.S.C.A.Title 35, Section 63, whereby the plaintiff, Arrow Distilleries, Inc., sought to restrain the Commissioner of Patents from cancelling a certain trade

mark registration owned by it. Defendant, The Globe Brewing Company, counter claimed for alleged trade mark infringement. The action under Revised Statutes, § 4915, was, however, later dismissed and plaintiff has now amended its bill of complaint also alleging infringement of its trade mark by the defendant.

Plaintiff is a Michigan corporation with its principal place of business in Detroit and doing a nation-wide business in alcoholic liqueurs and cordials under the trade mark "Arrow." Defendant is a Maryland corporation located in Baltimore and engaged in the manufacture and sale of beer which it sells not only in Maryland but in the District of Columbia and various other States under the trade mark "Arrow." Plaintiff's trade mark was registered in the United States Patent Office on August 27th, 1935, and defendant's trade mark was first registered there in 1913. On September 16th, 1935, defendant instituted proceedings in the Patent Office for the cancellation of plaintiff's registration under the Trade Mark Act of 1905, 15 U.S.C.A. §§ 81–109. Plaintiff opposed these proceedings on the ground that the products of the respective parties are not of the same descriptive properties and that accordingly, there could be no confusion between the parties or their products. In the various stages of the litigation through the Patent Office decisions were adverse to the plaintiff. Thereupon, the plaintiff brought the present suit under Revised Statutes, § 4915, in accordance with the right so to do given by this statute, but later abandoned this ground of action, as already explained. The parties have waived any claim for an accounting.

The Court finds that the defendant has established, pursuant to its counter claim, its right to preclude the plaintiff from the use of the trade mark "Arrow," subject to certain restrictions which will be hereinafter referred to.

The Court is unwilling to place this mark "Arrow" in the same class with words such as "Standard", "Gold Medal" and "Blue Ribbon." I shall not attempt to review the decisions under this branch of trade mark law. Suffice it to say, regardless of how far the law has gone or ought to go with respect to prohibiting the use of the same mark on non-competitive articles, it is clear that the present defendant is entitled to protection in the entire field of alcoholic beverages, subject to certain territorial limitations hereinafter explained, because, apart from the paucity of evidence in this case on the point of confusion, it is obvious that confusion may occur to any reasonable person. In other words, if beer is sold under the name "Arrow," and liqueurs or cordials are sold under a similar label using the same trade name "Arrow", all are sold by the same sort of stores, the same kind of distributing agents, and a confusion may very likely occur,—namely, the public may very well suppose that all are manufactured by one and the same. This is self-evident. Therefore, while I have no disposition to say that the distinction between the two classes of cases cited, which has been elaborately argued, is not sound, on the particular facts that may have arisen in those cases, I am not willing to narrow the rights under the word "Arrow" in this case as plaintiff claims should be done.

I am impelled to this conclusion to a very large extent by what I have been able to visualize at the trial. That is to say, the demonstration by defendant's counsel was very significant when he took one of the labels, quite at random, from the great variety of plaintiff's labels which were introduced in evidence, and placed it upon one of defendant's bottles of Arrow beer. Then he also took one of the bottle caps of the plaintiff that are in evidence and put it upon one of defendant's beer bottles. It very closely resembled in appearance defendant's bottles bearing defendant's "Arrow" labels.

Furthermore, there is very definite competition here, in the broad sense at least, even though direct competition does not exist in the sense that beer is purchased in place of cordials, liqueurs, etc., or vice versa, for it is correct to say that they all fall within the same general field,—the same general descriptive class of alcoholic beverages. That being true, such outweighs all of the other considerations that have been advanced on behalf of plaintiff.

I do not think that such rights in the word "Arrow" as the earlier Peoria company, referred to in the course of the trial, may have had, can be availed of here by plaintiff. It must stand or fall upon its own status with relation to the defendant. Intent is not the criterion. It is true there is no evidence that plaintiff adopted its corporate name because the defendant company had been successful. On the contrary, it is claimed that the reason why

the name was adopted was because the old, dissolved Peoria company used it and one of its originators, an officer who became connected with the plaintiff company, merely wanted to perpetuate that name. However that may be, we have here priority of use over a number of years by the defendant company in the same general field. It having spent, up to the time that plaintiff entered the field, namely, February 20th, 1934, approximately a half a million dollars in advertising its "Arrow" Beer; and up to that time it had done approximately $12,000,000 of gross business and had in addition, established a national advertising campaign of large proportions. Likelihood of confusion in the public eye or mind, as to the origin, that is, the creator or manufacturer of the product itself, is just as much the criterion,—the test,—as is likelihood of confusion with respect to the articles themselves. I conclude that it is very likely that one going into a retail liquor store or to a wholesale liquor distributor, knowing of the well established "Arrow" Beer, hearing or seeing that alcoholic beverages of any kind were being sold there under the label "Arrow", might be confused and think that both were produced by one and the same concern.

The point has been made that since a liqueur or cordial is not as pure a product as beer and, therefore, is more capable of dilution or reduction into an inferior quality, which means is more susceptible to price-cutting, these factors should weigh in favor of defendant's contention. I think that is true. All of this corroborates the conclusion here reached that we must look at this question of possible confusion in its broadest aspects. It remains, then, to be determined how extensive shall be the relief granted to the defendant.

The question of the extent of interstate rights under registered trade marks is not free from some difficulty, because the full effect of federal registration upon common law rights, resulting from the Trade Mark Act of February 20, 1905, 15 U.S.C.A. §§ 81–109, has never been directly adjudicated by the Supreme Court of the United States. The basic question presented here is whether the defendant, having the prior registration of the trade mark "Arrow" in connection with alcoholic beverages in the Patent Office under the Trade Mark Act of 1905, 15 U.S.C.A. Secs. 81–109, is

entitled to exclude the plaintiff from, or to monopolize markets that defendant's trade mark has never entered, either in intra-state or inter-state business, or where the use of defendant's mark has, in any business, been subsequent in point of time?

Defendant stresses the decision in Standard Brewery Co. of Baltimore City v. Interboro Brewing Co., 229 F. 543, a decision rendered by the Circuit Court of Appeals for the Second Circuit, in 1916. There, plaintiff had adopted and continuously used the trade mark "Bismarck" on beer since 1904. Registration of the mark was granted in 1907 under the Act of 1905. Some six years later defendant began selling beer under the same trade mark. In enjoining the defendant the Court said (229 F. page 544): "Trademark registered under the statutes of the United States is declared upon. The rights which a person obtains by registration of a trade-mark under those statutes are coterminous with the territory of the United States." This, however, is the only decision of which we are aware which so broadly construes the rights of the registrant. As already stated, the Supreme Court has never adjudicated the question, although an approach to its solution is found in at least four cases: Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713, decided in 1916; United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141, decided in 1918; United States Printing & Lithograph Co. v. Griggs, Cooper & Co., 279 U.S. 156, 49 S.Ct. 267, 73 L.Ed. 650, decided in 1929; and American Trading Co. v. H. E. Heacock Co., 285 U.S. 247, 52 S.Ct. 387, 76 L.Ed. 740, decided in 1932.

In the first of these cases it was held that the earlier adopter of a trade mark may not monopolize markets that his trade has never reached, and where the mark signifies not his goods but those of another. But no trade mark statute was involved. The Court said (240 U.S. at page 410, 36 S.Ct. at page 359, 60 L.Ed. 713): "It should be added that, so far as appears, none of the parties here concerned has registered the trademark under any act of Congress or under the law of any state. Nor does it appear that in any of the states in question there exists any peculiar local rule, arising from statute or decision. Hence, the cases must be decided according to common-law principles of general application."

In the second case just referred to, although there was a registration under a Massachusetts act of 1885 and under the Act of Congress of March 3rd, 1881, this latter act did not include commerce between the various States, but applied only to commerce between foreign nations and Indian tribes. There the Court said (248 U.S. at pages 98, 99, 100, 39 S.Ct. at page 51, 63 L.Ed. 141): "Property in trade-marks and the right to their exclusive use rest upon the laws of the several states, and depend upon them for security and protection; the power of Congress to legislate on the subject being only such as arises from the authority to regulate commerce with foreign nations and among the several states and with the Indian tribes. Trade-Mark Cases, 100 U.S. 82, 93, 25 L.Ed. 550.

\*   \*   \*   \*   \*   \*

"It is not contended, nor is there ground for the contention, that registration of the Regis trade-mark under either the Massachusetts statute or the act of Congress, or both, had the effect of enlarging the rights of Mrs. Regis or of petitioner beyond what they would be under common-law principles. Manifestly the Massachusetts statute (Acts 1895, p. 519, c. 462) could have no extraterritorial effect. And the Act of Congress of March 3, 1881 (21 Stat. 502, c. 138), applied only to commerce with foreign nations or the Indian tribes, with either of which this case has nothing to do. See Ryder v. Holt, 128 U.S. 525, 9 S.Ct. 145, 32 L.Ed. 529. Nor is there any provision making registration equivalent to notice of rights claimed thereunder. The Act of February 20, 1905 (33 Stat. 724, c. 592), which took the place of the 1881 act, while extending protection to trade-marks used in interstate commerce, does not enlarge the effect of previous registrations, unless renewed under the provisions of its twelfth section, which has not been done in this case; hence we need not consider whether anything in this act would aid the petitioner's case."

In the third case, while there was a registration under the Trade Mark Act of 1905, the alleged infringement was entirely intrastate, the Court saying (279 U.S. at pages 157, 159, 49 S.Ct. at page 267, 73 L.Ed. 650): "No interference with interstate or foreign commerce is alleged. \* \*

"In the Trade-Mark Cases, 100 U.S. 82, 25 L.Ed. 550, it was held that the earlier acts attempting to give these unlimited rights were beyond the power of Congress. Soon after that decision an Act of March 3, 1881 (21 Stat. 502), gave remedies for the wrongful use of a registered trade mark in foreign commerce or commerce with Indian Tribes. It was said that obviously the Act was passed in view of the above-mentioned case, that only the trade-mark used in such commerce was admitted to registry and that the registered mark could only be infringed when used in that commerce. Warner v. Searle & Hereth Co., 191 U.S. 195, 204, 24 S.Ct. 79, 48 L.Ed. 145 (see United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 99, 39 S.Ct. 48, 63 L.Ed. 141) and the constitutionality of the Act even when so limited was left open. 191 U.S. [at page 206] (24 S.Ct. 79 [48 L.Ed. 145]). The Act of 1905 goes a little farther and gives remedies against reproduction, etc., of the registered trade-mark 'in commerce among the several States' as well as in commerce with foreign nations, etc., section 16, supra. A remedy for such infringement was given in Thaddeus Davids Co. v. Davids Manufacturing Co., 233 U.S. 461, 34 S.Ct. 648, 58 L.Ed. 1046 [Ann.Cas.1915B, 322]. See also American Steel Foundries v. Robertson, 262 U.S. 209, 43 S.Ct. 541, 67 L.Ed. 953; United States ex rel. Baldwin Co. v. Robertson, 265 U.S. 168, 44 S.Ct. 508, 68 L.Ed. 962. But neither authority nor the plain words of the Act allow a remedy upon it for infringing a trade-mark registered under it, within the limits of a State and not affecting the commerce named. More obviously still it does not enlarge common-law rights within a State where the mark has not been used. General Baking Co. v. Gorman [1 Cir.] 3 F.2d 891, 894. Some attempt was made to support the decision upon other grounds, but we do not think them presented by the record, and they are not mentioned by the Ohio Court."

In the last of the four cases referred to, the Court declared that mere registration under the Federal Trade Mark Act of 1905 of a mark acquired in the United States, does not enable the owner to do local business under it in the Philippine Islands, in competition with another who has acquired the right to the mark there, by local use and by registration under the Philippine Act. The Court used this significant language (285 U.S. at page 258, 52 S.Ct. at page 390, 76 L.Ed. 740): "The acquisition of such property rights in trade-marks rested upon the laws of the

several States. United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 98, 39 S.Ct. 48, 63 L.Ed. 141; American Steel Foundries v. Robertson, 269 U.S. 372, 381, 46 S.Ct. 160, 70 L.Ed. 317; United States Printing & Lithograph Co. v. Griggs, Cooper & Co., 279 U.S. 156, 158, 49 S.Ct. 267, 73 L.Ed. 650. And in view of the object and terms of the statute, and of the assimilation in this respect of commerce with the Philippines to interstate commerce, the same rule of construction must be deemed applicable in both cases."

The following quotation from Derenberg on "Trade-Mark Protection and Unfair Trading" seems to this Court to be a correct statement of the law as far as it has been announced by the Supreme Court, as to the effect of registration (page 464): "The diverse views of the United States Supreme Court and the Supreme Court of Ohio in the 'Home Brand' case ([United States Printing & Lithograph Co., v. Griggs, Cooper & Co.], 279 U.S. 156 [49 S.Ct. 267, 73 L.Ed. 650; Id., 119 Ohio St. 151, 162 N.E. 425]) lead to the third basic problem; Can federal registration at least grant preemptive trade-mark protection in those instances where the infringer is using the mark not only in intra-state commerce, but in interstate commerce between various states not yet invaded by the plaintiff?' If the owner of a registered trade-mark is powerless under the Act to ward off any violation of his trade-mark in purely intrastate commerce, can he at least enjoin the infringer from using the mark in interstate commerce between these unentered states? The only dictum of a federal court to answer this question in the affirmative is to be found in the 'Bismarck' case [Standard Brewery Co. of Baltimore City v. Interboro Brewing Co., 2 Cir., 229 F. 543, 544], decided in 1916. The defendant had used the trade-mark 'Bismarck' for beer in certain parts of the United States which the plaintiff, who had registered his mark many years before, had apparently not invaded. In the opinion of the Circuit Court of Appeals it is stated: 'The rights which a person obtains by registration of a trade-mark * * are coterminous with the territory of the United States.'

"The defendant was enjoined absolutely from using the trade-mark 'Bismarck' for beer. In the author's opinion, it is doubtful whether the court intended to rule that federal registration can expand the territorial extent of protection in anticipation of actual use in interstate commerce. It is regrettable that the Supreme Court did not have the opportunity to render a decision in the 'Bismarck' case after granting certiorari, for the case, in the meantime, had been withdrawn. As matters stand, it is debatable whether this precedent establishes a rule more far reaching than that laid down in the 'Tea Rose' ([Hanover Star Milling Co. v. Metcalf], 240 U. S. 403 [36 S.Ct. 357, 60 L.Ed. 713]) and the 'Home Brand' (279 U.S. 156 [49 S.Ct. 267, 73 L.Ed. 650]) decision. Such a supposition is even more improbable inasmuch as Mr. Justice Holmes expressly stated in the 'Home Brand' case that federal registration could never create or expand common law rights in those individual states in which the trade-mark had not been used."

The case of Chapin-Sacks Mfg. Co. v. Hendler Creamery Co., 254 F. 553, a decision of the Circuit Court of Appeals for the Fourth Circuit, is consistent with the position here taken. There, it appeared that complainant had built up an extensive trade in ice cream under the name "The Velvet Kind" in one city and defendant had appropriated that name for its ice cream which it sold in another city. The Court held that upon defendant's beginning to sell ice cream in a third city in competition with complainant, defendant was bound to use the utmost good faith to distinguish its product from that of complainant, but should not be enjoined from entering territory in which the complainant had never established a market. It is true, however, that there again the precise statutory question here raised was not before the Court for decision because the allowance of the trade mark by the Patent Office was declared invalid. Nevertheless, this decision may be said to indicate at least a tendency favorable to the position taken in the present case. The Court said (254 F. at page 558): "We think the decree of the District Court went too far in enjoining the defendants from entering territory in which the complainant had not established a market for its cream under the designation of 'The Velvet Kind.'"

In the present case there is evidence that the defendant has for a number of years made, and is still making, sales in varying amounts, in nineteen separate States, including the District of Columbia, approximately 96% of the defendant's entire

business, however, being confined to Maryland, Virginia and the District of Columbia. Plaintiff urges that with respect to a number of these States there has been withdrawal or abandonment on the part of the defendant such as to require this Court to conclude that defendant is no longer doing business there. In a case of this kind, whether there has been withdrawal or abandonment turns largely upon intent. With respect to New York State, I find that in 1931 and 1932 defendant sold "near-beer" in Buffalo, but nothing in New York City. Defendant sold nothing in that State between 1932 and 1936, and has sold nothing there since 1937. In New Jersey, defendant made no sales until 1933. The only sales prior to 1936 were for a single account in a small town, in the extreme southern portion of the State. In Delaware, defendant's last sale was in 1936 and total sales reached only some $1,000. In Florida, the defendant has sold nothing since 1935. In Louisiana, defendant has sold nothing since 1934, and in Ohio, defendant never sold beer but did sell some near-beer or near-ale in 1931 and 1932, but has sold nothing there since the latter year. Some of these Ohio sales appear to have been of defendant's so-called "Double-X" rather than of "Arrow Special." However, from the weight of the credible evidence disclosing defendant's prior entrance, at least to some extent, into all of the above-named States, I am unwilling to hold that there has been an abandonment, for such must be more definitely proven.

Defendant's business is unquestionably a very large and profitable enterprise, and to hold that it has withdrawn from, or abandoned a particular territory, or has intended so to do, must be clearly shown.

Finally, while it is true there may be a division of territory within a particular State,—such as is here being sought by plaintiff with respect to the State of New Jersey,—I do not find the evidence sufficient to justify such division, particularly since any attempt at the suggested division would lead to even greater confusion and inability to determine with complete fairness just where the line should be drawn.

In view of the conclusions here reached, it becomes unnecessary to consider other questions raised at the trial. A decree will be signed in conformity with this opinion. That is to say, neither party will be granted an injunction against the other as respects a State which the party seeking the injunction has never, in fact, entered at all; and, even though one party may have been the first to register its mark in the Patent Office and also the first to ship its goods into a particular State, it cannot monopolize the market there except as to inter-state business, if the other party has preceded it there in intra-state business. As to those jurisdictions where plaintiff is enjoined from using the trade mark "Arrow", in either inter-state or intra-state business, such injunction will include, as well, plaintiff's use of its present corporate name in such business, unless plaintiff makes a notation on its bottle labels that it is distinct from the manufacturer of Arrow beer; because what has herein been said about the likelihood of deception with respect to the use of the trade mark "Arrow" applies, on principle, although not to the same extent, to the use of the name "Arrow", as part of the plaintiff's corporate name.