## GRIESEDIECK WESTERN BREWERY CO. v. PEOPLES BREWING CO.
### Civil Action No. 315.

District Court, D. Minnesota, Fifth Division.
April 29, 1944.

A. W. Murray, of Chicago, Ill., and Hunt, Palmer & Hood, of Duluth, Minn., for plaintiff.

T. J. Doyle, of Duluth, Minn., for defendant.

JOYCE, District Judge.

This is a suit for equitable relief for infringement of plaintiff's registered trademark and copyrighted label. There was also an allegation of unfair competition, but on the trial this was unsupported by proof. We are concerned only with the first two grounds mentioned.

Plaintiff is an Illinois corporation with its principal place of business in that state. It operates a brewery and since 1908 has sold beer in interstate commerce under the trade-mark "Stag." It is the owner of certificate of registration No. 320,594 registered January 1, 1935, under the Act of February 20, 1905, 15 U.S.C.A. § 81 et seq. Plaintiff is also the owner of "Stag" label copyrights dated March 10, 1908, and June 23, 1936, under U.S.C.A. Title 17. Plaintiff markets its beer in some thirteen states all of which are in a trade area extending south and west of Illinois. With the exception of Iowa, it has not sold its product

in any state contiguous to Minnesota. It has never sold beer in Minnesota, solicited business, advertised, or contracted in this state.

Defendant is a Minnesota corporation with its principal place of business in Duluth. It is also a brewery and in 1938 started to market beer under the name "Stag" using a label with a deer or elk's head not dissimilar to that used by plaintiff on its trade-mark and copyrighted label. There is no showing that defendant intentionally appropriated the mark and label of plaintiff; in fact, the contrary appears.

There is no competition in any state or in any trading area between plaintiff and defendant at the present time, nor has there been any such, nor is there any showing that such competition is imminent. Defendant has not gone beyond the Duluth trading area, and plaintiff's expansion has been entirely south and west from Illinois and not into the northern states at all. Plaintiff expresses what is not much more than a hope that it will, at some future time, extend into the trading area now occupied by defendant. Plaintiff's position is that its trade-mark, registered under the Federal Act, is entitled to protection even in a market to which it has not extended its business or advertising and which may or may not be in the orbit of its natural expansion.

The first question is what effect does registration have on the common law rights to a trade-mark.

■ The original right to the exclusive use of a trade-mark was not based upon any statute but upon principles of equity; "and the right is acquired, not by discovery or invention or registration, but by adoption and use." G. & C. Merriam Co. v. Saalfield, 6 Cir., 198 F. 369, 372, affirmed 241 U. S. 22, 36 S.Ct. 477, 60 L.Ed. 868.

In a recent case, Walgreen Drug Stores v. Obear-Nester Glass Co., 8 Cir., 113 F.2d 956, 960, certiorari denied Obear-Nester Glass Co. v. Walgreen Drug Stores, 311 U. S. 708, 61 S.Ct. 174, 85 L.Ed. 459, the court said:

"Mere registration under the Federal Act does not create a trade-mark and confers no new rights to the mark claimed, nor, indeed, any greater rights than already existed at common law without registration."

In General Baking Co. v. Gorman, 1 Cir., 3 F.2d 891, 894, it was contended that registration under the Federal Act gave plaintiff practically an unlimited right to expansion. The court, refusing to adopt such construction, said:

"This contention, on analysis, falls little short of making federal registration of a trade-mark the equivalent of a patent or copyright—a far-reaching proposition we cannot adopt. Nothing is better settled than that rights in trade-marks are of common-law origin, and are always 'appurtenant to an established business or trade in connection with which' they are employed."

Mr. Justice Holmes on two occasions has stated the effect of the registration act of 1905. In Prestonettes, Inc., v. Coty, 264 U. S. 359, 44 S.Ct. 350, 68 L.Ed. 731, he said:

"Then what new rights does the trade-mark confer? It does not confer a right to prohibit the use of the word or words. It is not a copyright. * * * A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his."

And in United States Printing & Lithograph Co. v. Griggs Cooper & Co., 279 U.S. 156, 49 S.Ct. 267, 73 L.Ed. 650:

"But neither authority nor the plain words of the Act allow a remedy upon it for infringing a trade-mark registered under it, within the limits of a State and not affecting the commerce named. More obviously still it does not enlarge common-law rights within a State where the mark has not been used."

■ Although the Supreme Court has not directly passed upon the interstate effect of federal registered trade-marks, from the language in the above cases it would appear that the act made no substantial change from the rights that existed at common law. But this is not the view taken in Standard Brewery Co. of Baltimore City v. Interboro Brewing Co., 2 Cir., 229 F. 543, 544, where it is said:

"Trade-mark registered under the statutes of the United States is declared upon. The rights which a person obtains by registration of a trade-mark under those statutes are coterminus with the territory of the United States."

No authority is cited in support of this proposition and the court proceeds to dispose of the case as if the statement were axiomatic. Certiorari was granted Interboro Brewing Co. v. Standard Brewery Co., 243 U.S. 639, 37 S.Ct. 404, 61 L.Ed. 942, but unfortunately the case was dismissed without argument 246 U.S. 677, 38 S.Ct.

315, 62 L.Ed. 934. In Arrow Distilleries, Inc., v. Globe Brewing Co., D.C., 30 F. Supp. 270, 272, this statement in the Standard Brewery case is discussed (apparently the only case that does discuss it). The court said:

"This [the Standard Brewery case], however, is the only decision of which we are aware which so broadly construes the rights of the registrant."

It is pointed out that the power of Congress to pass a registration act is derived from its power to regulate commerce and that the Act of February 20, 1905, does not give a remedy for infringement of a federally registered mark where interstate commerce is not affected or where the mark has not been used. United States Printing & Lithograph Co. v. Griggs, Cooper & Co., 279 U.S. 156, 49 S.Ct. 267, 73 L.Ed. 650. A quotation from Derenberg on "Trade-Mark Protection and Unfair Trading" is cited as expressing the views of the court. It reads, in part:

"In the author's opinion, it is doubtful whether the court intended to rule [in the Standard Brewery case] that federal registration can expand the territorial extent of protection in anticipation of actual use in interstate commerce. * * * As matters stand, it is debatable whether this precedent establishes a rule more far reaching than that laid down in the 'Tea Rose' ([Hanover Star Milling Co. v. Metcalf], 240 U.S. 403 [36 S.Ct. 357, 60 L.Ed. 713]) and the 'Home Brand' ([United States Printing & Lithograph Co. v. Griggs, Cooper & Co.], 279 U.S. 156 [49 S.Ct. 267, 73 L.Ed. 650]) decision. Such a supposition is even more improbable inasmuch as Mr. Justice Holmes expressly stated in the 'Home Brand' case that federal registration could never create or expand common law rights in those individual states in which the trade-mark had not been used." 30 F.Supp. at page 274.

This seems to be a careful and accurate statement of the law on this point and, in effect, leaves the common law doctrines, particularly as expressed in the Hanover and Rectanus cases, infra, undisturbed by the registration act. The Arrow Distilleries case, however, was reversed on other grounds (4 Cir., 117 F.2d 347), with nothing said about this phase of the case.

2. The ultimate question, then, is the determination of the common law rights of the owner of a trade-mark in a territory where the mark is not known or used.

On one thing there seems to be complete agreement; that is, that the common law of trade-marks is but a part of the broader law of unfair competition. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713. Rosenberg Bros. & Co. v. Elliott, 3 Cir., 7 F.2d 962. The ultimate offense always is that defendant has passed off his goods as and for those of the complainant, G. & C. Merriam Co. v. Saalfield, 6 Cir., 198 F. 369, affirmed 241 U.S. 22, 36 S.Ct. 477, 60 L.Ed. 868, and relief may be granted to one on the ground of unfair competition who is not entitled to relief under the law of trade-marks. Scandinavia Belting Co. v. Asbestos & Rubber Works, 2 Cir., 257 F. 937; Phillips v. Governor & Co., etc., 9 Cir., 79 F.2d 971.

"The vice consists in the sale of goods of one manufacturer or dealer as those of another *by means of* the use of such trade-mark. * * * To warrant relief in equity, *it must appear that false representation is directly or impliedly made.*" Walgreen Drug Stores v. Obear-Nester Glass Co., 8 Cir., 113 F.2d 956 (Italics supplied.)

In the Hanover Star Milling Co. v. Metcalf case, supra, there were three concerns all marketing flour under the seemingly uncommon name of "Tea Rose." However, two of the concerns were in actual competition and the decision is based upon the principles of unfair competition. With that phase of the case we are not concerned. The material facts are that Allen & Wheeler Company were the prior users of the trade-mark "Tea Rose" for flour and confined their market operations to territory north of the Ohio River. The Hanover Company subsequently innocently adopted the same mark and built up a large and profitable business in southern states, particularly in Alabama. There was no actual competition between the parties and the Allen & Wheeler product was not known in Alabama and adjoining states and was not advertised there. "Tea Rose" meant the Hanover product in that area. None of the trade-marks was registered, but there is nothing in the opinion to indicate the result would have been different if they had been. Common law principles were applied. After a careful examination of English cases, the court held that the property right in a trade-mark is not in the mark itself but in the good will and trade reputation that flows from it. Priority of appropriation of the mark is important only when there is competition under the same mark in the same territory;

but when the same mark is being used, even on the same class of goods, in independent markets, priority of appropriation becomes "legally insignificant" *unless* the "second adopter has selected the mark with some design inimical to the interests of the first user, such as to take the benefit of the reputation of his goods, to forestall the extension of his trade, or the like." 240 U.S. at page 415, 36 S.Ct. at page 361, 60 L.Ed. 713.

■ This language, although dictum, has important implications. The rule deducible from it would be: The prior appropriator is protected against an innocent junior appropriator only in territory where the mark is used in connection with business; but against a wilful appropriator, he can be protected in a trade area where his mark is known (even if not used) and *also* in an area where the mark is neither used nor known but to which the businesss or mark might in the future "extend." The court is careful to point out that:

"We are not dealing with a case where the junior appropriator of a trade-mark is occupying territory that would probably be reached by the prior user in the natural expansion of his trade, and need pass no judgment upon such a case."

From the previous language in the case, it seems clear that what is meant here is an *innocent* "junior appropriator."

■ United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141, is similar on its facts to the Hanover case, supra, with the added factor that the parties actually came into competition. The marks were independently adopted and used in different markets until the prior user invaded the state where the innocent subsequent adopter was operating and sought an injunction—without success. Mr. Justice Pitney wrote the opinions in both of these cases and the Rectanus case in the lower court, 6 Cir., 226 F. 545, is cited by him in the Hanover case. It is pointed out that plaintiff's case depends entirely upon the fact that it was the prior user and that its rights should prevail over the subsequent adopter even though the latter acted in good faith and in a market where the prior user was not then known. The court says that a trade-mark is not a right in gross or at large like a copyright or patent with which it has "little or no analogy" but is only a right appurtenant to the established business or trade. The owner of a mark cannot make a negative or prohibitive

use of it as a monopoly. It would be a "perversion of the rule of priority" to apply it in this case. It is important to note that this case, like the Hanover case, is not decided under the present registration act and it is expressly said that the court will not consider whether that act gave the parties any additional rights to those they had at common law. The court is also careful to point out that the subsequent appropriator acted in good faith and cases where there was not good faith are distinguished.

Subsequent cases invariably follow or distinguish the Hanover and Rectanus cases. After a lengthy consideration of both cases the Circuit Court of Appeals of the Eighth Circuit in Sweet Sixteen Co. v. Sweet "16" Shop, Inc., 15 F.2d 920, 923, reduces the rule thus:

"Confessedly, then, the general rule is that, while the first appropriator and user of a trade-mark owns such mark and is entitled to protection by the courts in the use thereof, against subsequent users on the same class of goods, such protection will not be afforded as against a subsequent user and appropriator, who in good faith adopts and uses the mark in territory into which the goods of the first appropriator have not penetrated and have not been used or sold * * *."

In that case there was actual competition, although of a small amount and the subsequent appropriator had knowledge of the prior user's mark. This would seem to be enough, but there is some question as to whether or not the court considered that the territory in question (Utah) was in the natural field of expansion for mail order business of the prior user (San Francisco). The opinion quotes from Kathreiner's Malzkaffee Fab. v. Pastor Kneipp Medicine Co., 7 Cir., 82 F. 321, 27 C.C.A. 351, to the effect that equity, in the interest of fairness to the owner of the trade-mark and to make it possible to develop his trade, should protect a trade-mark in a new territory (another country in that case) even though it is not widely known or "fully established." But the original report discloses that the corporation that was the subsequent adopter was: "'conceived in sin and brought forth in iniquity,' that wrong attended at its birth, and that fraud stood sponsor at its christening, imposing upon the corporate child a name to which it was not entitled, and which it had no right to bear." 82 F. at page 324. This inimitable language leaves no doubt that the court thought there

was a lack of good faith and so would be within the Hanover rule.

General Baking Co. v. Goldblatt Bros., Inc., 7 Cir., 90 F.2d 241, is an example of the application of the above mentioned rule. Both concerns were selling bread under a "Bond" label. One operated in Chicago, the other in St. Louis and the trade area of each extended in a radius of fifty miles from their respective cities. They were not in competition. The question of prior appropriation was considered immaterial and no relief was granted. The markets were referred to as "remote" and although the St. Louis company was "desirous" of entering the Chicago field, it had not taken any steps to do so, made no contracts, or investments. What their rights would be in such a case, the court said, in effect, is a bridge we will cross when we come to it.

On this latter point, it was said in National Grocery Co. v. National Stores Corporation, 95 N.J.Eq. 588, 123 A. 740, 743:

"It is entirely too remote and fanciful for the complainant to object to another using a name in a certain locality, not because he has already established his trade there, but because he may do so in the future. For it is equally probable he may not."

However, this was not a trade-mark case, but involved only unfair competition.

Other cases simply state that the protection of a trade-mark is limited to "appropriate trade territory." Louisville Taxicab & Transfer Co. v. Yellow Cab T. Co., D. C., 53 F.Supp. 272, 277. Hemmeter Cigar Co. v. Congress Cigar Co., 6 Cir., 118 F.2d 64.

A different situation would be presented if the plaintiff company had an established business reputation in the defendant's area. The Governor and Company of Adventurers of England Trading into Hudson's Bay v. Hudson Bay Fur Co., D.C., 33 F.2d 801, decided in this district by Judge Cant, was such a case. There, the plaintiff company had formerly operated in Duluth and its mark had been appropriated by defendant. The Rectanus and Hanover cases were distinguished, it being pointed out that in those cases the appropriation was made in ignorance and not a deliberate attempt to take advantage of the plaintiff's reputation. There is no showing in the instant case that the plaintiff brewery had an established business reputation in the Duluth area. Although Nims on "The Law of Trade Marks and Unfair Competition" says of the Hanover and Rectanus cases: "It would be difficult to imagine two cases more unusual or more unlikely to be repeated" (p. 569), it seems that the case at bar is such a case. There is no competition between the parties. For all intents and purposes plaintiff's mark and product are not known in defendant's trade area. It has incurred no expenses, taken no options, made no contracts, or done any advertising there. It is therefore not entitled to equitable relief for the infringement of its trademark.

I consider it unnecessary to discuss whether the Duluth trade area for beer is within the natural field of expansion of an Illinois brewery because under the circumstances disclosed here, even if it were, plaintiff could get no relief as long as defendant has, in good faith, appropriated its mark to the territory.

3. The copyrighted label contains the words "Stag Beer" in large letters, "Extra Dry Pilsener" in smaller letters, and the name of the plaintiff company. At the top and in the center of the label is a picture of the head of an animal of the deer family. This label is apparently copyrighted under the Act of June 18, 1874, 18 Stat. 78, § 3, 17 U.S.C.A. § 63, which provides:

"Registration of prints and labels. In the construction of this title, the word 'print' shall be applied only to pictorial illustrations or works connected with the fine arts, and no prints or labels designed to be used for any other article of manufacture shall be entered under the copyright law, but may be registered in the Patent Office * * *."

Although the Act of March 4, 1909, 35 Stat. 1075, 17 U.S.C.A. §§ 1–62, amended and consolidated the copyright law, no reference was made to the quoted section and, for a time, it was thought that it may have been repealed by implication. See Fargo Mercantile Co. v. Brechet & Richter Co., 8 Cir., 295 F. 823. But in Hoague-Sprague Corporation v. Frank C. Meyer Co., D.C., 31 F.2d 583, it was held that the section was not repealed by the Act of March 4, 1909. This was also the opinion of the Attorney General, 28 Op.Atty.Gen. 116. There can now be little doubt that this interpretation was correct as Congress has since repealed the section by the Act of July 31, 1939, c. 396, Sec. 1, 53 Stat. 1142, and replaced it with two sections (17 U.S.C.A. §§ 64, 65) which, in effect, provide that after

July 1, 1940, prints and labels shall be registered with the Register of Copyrights instead of the Patent Office. The statute upon which plaintiff's rights depend, 18 Stat. 78 § 3, 17 U.S.C.A. § 63, is valid and affords protection under the copyright law. Higgins v. Keuffel, 140 U.S. 428, 11 S.Ct. 731, 35 L.Ed. 470; Hoague-Sprague Corporation v. Frank C. Meyer Co., supra.

■ In Higgins v. Keuffel, supra, it was said that the copyright law does not apply to labels which describe articles and have no value separate from them. They must have some value as a composition and some purpose other than advertising. But in Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 23 S.Ct. 298, 300, 47 L.Ed. 460, a circus poster was held to be protected under the copyright law. Mr. Justice Holmes said in that case:

"Certainly works are not the less connected with the fine arts because their pictorial quality attracts the crowd, and therefore gives them a real use,—if use means to increase trade and to help make money. A picture is none the less a picture, and none the less a subject of copyright, that it is used for an advertisement."

■ Under this more liberal rule, pictures of vegetables were held to be protected by copyright although intended for advertising and possessing little artistic merit. Stecher Lithographic Co. v. Dunston Lithograph Co., D.C., 233 F. 601. Tested by these standards, the picture of the animal's head on plaintiff's label is copyrightable and entitled to protection. But the textual part of a label is eligible for copyright registration, as a matter of art, only when it aids or augments the pictorial illustration. Bobrecker v. Denebein, D.C., 28 F.Supp. 383. Defendant's label also contains the words "Stag Beer" in large letters and "Extra Pale Pilsener" in smaller letters, so that, aside from the pictorial illustration, there is some similarity in the appearance of the labels. I do not think the quoted words are of such originality and a contribution to the "fine arts" as to entitle them to protection under the copyright law. See Fargo Mercantile Co. v. Brechet & Richter Co., 8 Cir., 295 F. 823.

The only part of plaintiff's label that is subject to copyright protection is the picture of the animal's head. The head depicted on defendant's label appears to be of a different animal. One is evidently an elk, the other a deer. There is no showing that defendant copied the picture on plain-

tiff's copyrighted label and it does not appear from an examination of the pictures that it did so. There is no infringement of the copyrighted label.

At the conclusion of the trial on the merits I indulged in comment and gave expression to conclusions at variance with what is above set forth. Further study of the evidence and the applicable authorities convinces me that the conclusions reached at the trial were erroneous. The same are therefore withdrawn and the considered judgment of the court is that judgment should be entered for the defendant and the prayer of plaintiff's complaint be denied.